[Civ. No. 1326.   Third Appellate District.—June 30, 1915.]

BELLE GIBERSON, Appellant, v. W. B. FINK, Respondent.

BUILDING CONTRACT—TIME OF COMPLETION—REASONABLE TIME—WHAT CONSTITUTES.—Where a building contract contains no provision as to the time within which the building is to be completed, the completion must be within a reasonable time, and what constitutes a reasonable time depends upon the circumstances under which the work of construction has been prosecuted.

ID.—TIME OF COMPLETION—REASONABLE TIME.—In an action to recover a sum of money paid on the purchase price of a dwelling-house to be erected by the defendant, on the ground that its construction had not been completed within a reasonable time, no unreasonable delay is shown upon proof that the building was completed within seven days of the time set by the plaintiff for such completion.

ID.—NONCOMPLETION OF SIDEWALK—EFFECT OF.—Ordinarily a provision in a building contract specifying a definite time within which the structure shall be completed is to be construed as meaning that the time specified has reference to the building proper, and that it shall be by the end of such time in such condition as to be ready for occupancy, and does not include the sidewalk to be constructed in connection with the building.

ID.—VARIATIONS FROM SPECIFICATIONS—ESTOPPEL.—The plaintiff in such an action is estopped from asserting that the defendant made de-

partures from the specifications in changing the location of the house from the middle to one side of the lot, and in making the foundation of brick, instead of concrete, where she had full knowledge thereof when the changes were made, but failed to object thereto.

ID.—RESCISSION—TRIVIAL OMISSIONS.—The rescission of a building contract by the owner is not warranted by the failure of the contractor to comply strictly with the specifications in trivial matters, such as failing to place cupboards in the kitchen, where the same could be supplied without injury to the structure or impairment of the contract rights of the owner.

ID.—AMENDMENT OF BUILDING CONTRACT—PAYMENT OF BALANCE OF PRICE.—In a suit for rescission of a building contract, parol testimony is not admissible to prove that the parties intended by a subsequent agreement, which made no provision as to the payment of the balance of the purchase price, to eliminate such provision from their agreement, where it was not intended that the new agreement should entirely supersede the original contract.

ID.—DEVIATIONS FROM CONTRACT—EVIDENCE—ORAL AGREEMENT—COST OF BUILDING AND KIND OF MATERIAL.—In an action to rescind a building contract for noncompliance with specifications, exclusion of evidence of an oral agreement as to the cost of the building and kind of material to be used, was not improper, as precluding plaintiff from showing deviations from the contract, where such oral agreement showed no more than the written contract showed.

ID.—SCOPE OF AGENCY—EXCLUSION OF EVIDENCE—HARMLESS ERROR.—In such an action, the exclusion of evidence as to the scope of the authority of plaintiff's agent is harmless error, where the plaintiff herself testified as to the scope thereof.

ID.—REASONABLE TIME TO COMPLETE DWELLING—EVIDENCE—OPINION.—Exclusion of testimony by plaintiff's agent as to what would constitute a reasonable time to complete the building was not erroneous, where such question was an ultimate issue in the case.

ID.—PLEADING—VARIATIONS FROM SPECIFICATIONS—WAIVER.—A finding that plaintiff had waived deviations in the specifications is not erroneous as being without the pleadings, where evidence was introduced without objection and the trial had upon the theory that the waiver was an issue within the pleadings.

ID.—SUBSTANTIAL PERFORMANCE OF BUILDING CONTRACTS—APPLICABILITY OF RULE.—The general rule that a substantial compliance with the terms of a building contract is a sufficient performance, is applicable as well to a contract whereby the contractor agrees to erect a building on his own lot in accordance with certain plans and specifications and to sell the lot and the building as so completed for a specified price, as to a contract where the building is erected on a lot owned by the party for whom the structure is to be constructed.

ID.—DEPARTURES FROM CONTRACT—ACQUIESCENCE IN—RULE.—The rule of substantial performance, however, is of no very great importance

in a case where the several material departures from the original contract are either consented to before made or acquiesced in after made.

APPEAL from a judgment of the Superior Court of Sacramento County.   Malcolm C. Glenn, Judge presiding.

The facts are stated in the opinion of the court.

H. S. Derby, and R. L. Shinn, for Appellant.

J. M. Inman, for Respondent.

HART, J.—The plaintiff brought this action to recover the sum of one thousand dollars paid by her to the defendant on the purchase price of a dwelling house, erected by the defendant on a lot situated in East Sacramento.   On the fifth day of February 1913, the plaintiff and the defendant entered into and executed a written contract, whereby the latter agreed to erect upon a lot owned by him a dwelling house or cottage, and to sell and convey the same to the plaintiff for the sum of two thousand two hundred dollars, of which amount the plaintiff agreed to pay and did pay the defendant, upon the execution of said contract, the sum of one thousand dollars, the balance of the purchase price to be paid in monthly installments of seven dollars, payable on the fifteenth day of each month and until the purchase price was fully paid.   Subsequently the parties made the following supplementary agreement:

"AGREEMENT.

"Sacramento, Calif., May 5th, 1913.

"Agreement made this day between W. B. Fink, party of the first part, and Mrs. Belle Giberson, party of the second part, wherein the party of the first part does agree to sell lot No. 17 (seventeen) of the W. B. Fink subdivision, and to erect thereon a (5) five room cottage, as per plan made by A. W. Campbell, architect, 3405 J. Street, for the sum of $2,500.00 (two thousand five hundred dollars).   This is to include sidewalks in front and around the house, oiled street or roadway.

"Doors, windows, and all inside furnishings to be of redwood.   Flooring and all studding to be of Oregon pine.

Hard wall plastering, sand finish, two coats of paint inside and outside.

"Low-down toilet, enamel bath tub and lavatory, sink for kitchen, and wash trays for back porch.

"Gas to be provided for in kitchen. Electric wiring only. The discharge and sewer to be provided for, either by a cesspool or carriage from premises where proper provision will be made.          [Signed]    W. B. FINK.

MRS. BELLE GIBERSON."

The theory upon which the plaintiff claims the right to a recovery is that the defendant failed to perform the terms of the agreements, in this: 1. That he did not complete the construction of the house within a reasonable time; and, 2. That in the construction of the cottage he deviated in material particulars from the plans and specifications according to which the same was to be erected and completed. The complaint, by appropriate averments, charges the breach of the contract in the particulars thus generally referred to, and alleges furthermore that the plaintiff fully performed the obligations imposed upon her by said agreements.

The answer denied that the defendant violated the agreements in any particular, and alleged that he performed the same strictly in accordance with the terms thereof and that he completed the construction of the building on the twenty-seventh day of August, 1913, denied performance on the part of the plaintiff, and alleged that she breached those terms of the first agreement whereby she agreed to pay certain monthly installments on the balance of the purchase price of the cottage and interest on said amount. The defendant, however, asked for no affirmative relief, and was awarded none.

Upon the issues so framed the cause was tried by the court sitting without a jury. Stating it in a general way, the court found that the defendant completed the building within a reasonable time and in accordance with the plan, specifications, and the terms of the contracts, except that, in the construction of the cottage, he departed in certain particulars from the specifications set out in the supplementary agreement, dated May 5, 1913, in the making of which alterations the plaintiff. acquiesced; that the plaintiff failed to keep her part of the first agreement in the respects above-mentioned; and that previously to the completion of the building on August 27, 1913, she "had abandoned her said contract and had refused to be

further bound thereby." The defendant was accordingly awarded judgment, from which the plaintiff prosecutes this appeal, and supports the same by a transcript of the record, as prescribed by section 953a of the Code of Civil Procedure.

The points urged for a reversal of the judgment are that the findings vital thereto derive no support from the evidence, and that the court erred in its rulings permitting and disallowing answers to certain questions propounded to the witnesses.

It will be observed that neither the original nor the supplementary agreement contains a provision as to the time within which the building should be completed after the execution of those instruments, and in the absence of such a provision in a building contract the rule is that the building shall be completed within a reasonable time; and what a "reasonable time" is in such cases is a proposition whose solution must necessarily depend upon all the conditions and circumstances under which the work of constructing the structure has been prosecuted.

The defendant entered upon the execution of the terms of the agreements on or about the first day of June, 1913. It appears that, near the middle of the month of July of that year, the plaintiff conceived that progress in completing the contract on the part of the defendant was not being prosecuted with proper diligence and haste, and thereupon, through her attorney, Mr. H. S. Derby, addressed a letter to the defendant, dated July 18, 1913, the same having been served on and delivered to the latter by a constable, on the twenty-second day of July, 1913, in which, after declaring that there had been unreasonable delay in the completion of the contract of May 5, 1913, directing attention to the absence therefrom of any special time for completing the same, and stating that the absence of a provision as to the time for completing said contract called for the construction of the cottage according to the adopted plan and specifications within a reasonable time, notified him that:

"Unless it [said contract] is so completed on or before the 20th day of August, 1913, I shall decline to be further bound thereunder, and shall demand that you repay to me the sum of one thousand dollars paid you by me on account thereof, with interest."

The building not having been completed on the twentieth day of August, 1913, the date to which the defendant was limited by the plaintiff in said letter, the latter, on the twenty-first day of August of said year, caused to be served on the defendant on the twenty-second day of August, 1916, the following notice:

"Sacramento Cal., August 21, 1913.

"To W. B. FINK, 38th and G streets; Sacramento, Cal.: Default having been made by you in the completion of work required under your contract to sell me lot No. 17 of the W. B. Fink subdivision, and to erect thereon a five-room cottage as per plan made by A. W. Campbell, architect, notice concerning which was received by you July 22, 1913, you are hereby notified that I decline to be further bound under said contract, and hereby demand that within five days from the service of this notice upon you that you repay to me the sum of one thousand ($1,000.00) dollars, paid by me to you on account of said contract. Said payment may be made to T. B. Hagarty, to me personally at my residence or to my attorney, H. S. Derby, Room 502, People's Savings Bank Building, Sacramento, California. In case payment is not made, I shall begin action against you for the recovery of said sum with interests and costs.

"(MRS.) BELLE GIBERSON.

"By H. S. Derby, Her Attorney and Agent."

On August 27, 1913, the defendant notified the plaintiff in writing that the building had been completed "in compliance with the contract and specifications heretofore entered into between" her and the defendant, and demanded of her that she "perform and fulfill the several conditions and covenants on your part, in said contract contained, within three days from the date of the service of this notice." There is a dearth of testimony in the record relative to the conditions under which the building was constructed. An attempt was made by the plaintiff to show, by opinion testimony, that to complete the building within a "reasonable time," the requisite number of men was not employed in the construction of the building. The testimony thus sought to be brought out was excluded by the court on the objection of the defendant. No other affirmative showing was made or attempted upon that point. No reason or explanation was given for delaying the commencement of the work of construction for nearly a

month from the date of the so-called supplementary agreement. Nor, so far as the record discloses, was any objection thereto raised by the plaintiff until the date of the inditement of her letter of July 18, 1913, addressed to and subsequently served upon the defendant.

The building called for by the contract was to be, and as completed is, a five-room cottage with the usual interior finishings, a front porch of six feet in width, and a sidewalk. With the exception of the sidewalk, it was completed in conformity with the specifications within 3 months from the date of the last agreement between the parties and within forty days from the date of the plaintiff's letter or notice to the defendant, above mentioned, the building on the date of said letter having been in course of construction for a period of approximately 48 days.

It will be perceived that there was nothing in the record by which the trial court could be guided in making a finding upon the question whether the building was completed within a "reasonable time" but the general conditions and circumstances of the situation as disclosed by the proofs. While it was for the court, and not the plaintiff, or any other witness, to say what was a "reasonable time," the latter nevertheless, in her letter to the defendant, as seen, fixed 33 days from the eighteenth day of July, 1913, as a reasonable time within which to complete the cottage, and her action in this regard could well have been, and doubtless was, viewed by the trial court as an admission by her, based upon her familiarity with all the conditions of the situation from the beginning of the construction of the cottage, that 33 days from the date of said letter was a reasonable time for the completion of the contract. She had, either in person or by her agent (a Mr. Sehested, a carpenter and building contractor, employed to watch the work of construction and see that it was carried out according to agreement), frequently visited and inspected the work while it was in progress, and from this we have the right to assume that she was able to form fairly reasonable judgment as to the time, from July 18th, within which the contract should be completed. The cottage, as we have seen, was completed within seven days after the expiration of the time within which she, by her notice or letter of July 18th, demanded of the defendant that he complete his contract by the twentieth day of

August, 1913, on pain of her withdrawal from the obligations thereof.

We have now presented about all the showing that was made upon the question whether the execution of the requirements of the contract was prosecuted and its completion attained by due or proper diligence and within a reasonable time, and we do not feel warranted in declaring that from such showing the trial court was not justified in concluding and finding that the defendant's failure by seven days only in complying with the plaintiff's demand for the completion of the building by the end of the time fixed by her did not constitute an unreasonable delay, or that, under all the circumstances as shown, the cottage was not completed within a reasonable time from the date of the agreement of May 5, 1913.

The sidewalk was not, it is true, completed until some time either in the month of September or October, 1913. Ordinarily, however, a provision in a building contract specifying a definite time within which the structure shall be completed is to be construed as meaning that the time specified has reference to the building proper and that it shall be by the end of such time in such condition as to be ready for occupancy. This, we think, must be true where the contract does not contain some other provision clearly forbidding such a construction of a covenant as to time. Here, as seen, there is no express provision as to the time within which the building should be completed, and we take it that, while impliedly the contractor was required to finish the cottage within a reasonable time, it cannot be said that merely because the sidewalk which under his engagement he was to construct in connection with the house was not completed by the time he had completed the building, which it may be conceded was the limit of a "reasonable time" for its completion, he therefore had failed to complete his contract within a "reasonable time."

From common experience it is safe to say that a sidewalk is the last appurtenant of a building to be constructed and this is very properly so; for, quite clearly, it would be exceedingly inconvenient, if, indeed, not impracticable, to construct a sidewalk before or simultaneously with the construction of a building around or about which it is to be located. Of course, the defendant was obliged to build a sidewalk along the lot upon which the house was erected, and this he did and

completed the same within approximately five or six weeks after the cottage was completed.   This was a fairly reasonable time after the cottage was finished.   At any rate, we can perceive no sound reason for saying that the time which was shown to have intervened between the completion of the cottage and the completion of the sidewalk should be considered as constituting such delay in the completion of the contract as to justify the plaintiff in repudiating the same.

The asserted unauthorized variations from the specifications in the construction of the cottage consisted of the following changes: 1. Locating the building in the center of the lot, instead of near the west side thereof, as was the original understanding; 2. Making the foundation of brick in the place of concrete as called for by the agreement; 3. Putting in a smooth plaster finish in the kitchen in lieu of a sand finish the latter finish being specified in the contract; 4. Failure or omission to install closets and cupboards in the kitchen; and, 5. Making the porch five feet instead of six feet in width, according to the agreement.

As to the location of the cottage in the center of the lot, the plaintiff admitted that a change in the dimensions of the lot was caused by the refusal of the authorities of Sacramento City to accept the street as it was laid out through the block in which the lot was situated, and that this necessitated a change in the location of the house on the lot.   She stated that this matter was fully explained to her by the defendant and admitted that she acquiesced in the change of locations. As to the porch, the evidence conclusively shows that it was six feet and one inch in width and in dimensions conformed to the agreement.

Relative to the act of making the foundation of brick in lieu of concrete, the defendant testified that the facilities for procuring water in the locality in which the lot is situated at the time of the construction of the building were exceedingly limited owing to the fact that city water had not up to that time been extended to that part of the city of Sacramento, to which the locality in question had but recently been annexed.   The result of this was that there was not available to the contractor sufficient water with which to mix the cement and thus form the concrete.   The contractor in the absence of the defendant, therefore, took it upon himself to construct the foundation of brick.   Both the defendant and his wife tes-

28 Cal. App.—3

tified that the cause of this change in the material out of which the foundation was made was fully explained by them to the plaintiff, who acquiesced in the change, saying it was immaterial to her "as long as the foundation was properly constructed."

Moreover, all the changes above mentioned were made before the twenty-eighth day of July, 1913, on which day, in response to a letter from the defendant asking her what color of paint she desired put on the house, the plaintiff addressed and sent to the defendant a letter in which she specified the color in which she desired both the exterior and interior of the cottage to be painted. Up to the date of that letter both she and her agent, Mr. Sehested, had, as before stated, made frequent visits to and inspected the building as it was being constructed. In that letter she made no complaint about the location of the house on the lot or the changing of the material from which the foundation was made, and certainly she must have known of those changes then, they having necessarily, from their very character, been made with the beginning of the work of construction.

As to the cupboards which were to be placed in the kitchen, it is to be observed that the testimony is somewhat hazy, it not being entirely clear from the evidence whether they were or were not installed. But, assuming that they were not, omission to do so is not of sufficient moment to justify the conclusion that the contract and the specifications were not substantially complied with. Such trivial omissions are likely to, and doubtless do, occur in the execution of the terms of nearly all building contracts; but where, as here, the building has been constructed in substantial conformity to the plan and specifications according to which the contractor bound himself to erect it, then such omissions, always capable of being supplied without injury to the structure or the impairment of the rights of the owner under the contract, cannot be made a handle for the repudiation *in toto* of the contract by the latter.

Our conclusion is that the court's findings that the cottage was completed within a reasonable time and in substantial conformity to the contract and specifications set forth in the agreement of May 5, 1913, and that the changes made in the specifications were with the consent or acquiescence of the plaintiff are sufficiently supported. Even in the absence of evidence that the plaintiff expressly consented to or ac-

quiesced in the changes above referred to, she should be held estopped by her conduct from complaining of them now. She knew of the most important changes at the time they were made, and when the construction of the building had progressed no further than the completion of the foundation. She made no objection to them at that time, when the defendant could have remedied his departure from the specifications without tearing down the entire building or without very great expense. The defendant had the right to assume, and no doubt did assume, that by her silence with respect to the changes the plaintiff had no objection to them and that they were agreeable to her, and so proceeded with the construction and completion of the building. ''Where any person, by a course of conduct, or by actual expressions, so conducts himself that another may reasonably infer the existence of an agreement or license, whether the party intends that he should do so or not, it has the effect that the party using that language, or who has so conducted himself, cannot afterward gainsay the reasonable inference to be drawn from the words or conduct.'' (Pollock, C. B., in *Cornish* v. *Abington*, 4 Hurl. & N. 549; Pomeroy's Equity Jurisprudence (2d ed.) sec. 805, p. 1117.) The doctrine thus stated, which is that of equitable estoppel, is a familiar one, and applies with peculiar pertinency to the case here with respect to the conduct of the plaintiff in regard to the alterations made by the defendant.

The foregoing observations constitute a reply to the contention that there is no evidence which supports the finding that the defendant did not abandon the contract. It is, however, objected that there is no support to the finding that the plaintiff abandoned the contract. There would be no force to this objection, so far as the judgment is concerned, even if it were technically tenable. The action is one for the recovery of the one thousand dollars paid by the plaintiff to the defendant on the purchase price of the house, and is based upon the alleged nonperformance of the contract according to its terms by the defendant. The finding that the latter did carry out the contract in conformity to its requirements is, as we have shown, supported by the proofs, and this finding is itself sufficient to support the judgment. It hence follows that whether the plaintiff abandoned the contract in a legal sense, or merely refused to be bound by its terms, is quite immaterial.

The plaintiff unavailingly attempted to show by parol testimony that, by the execution of the last contract, the parties intended to eliminate from their agreement the provision calling for the payment by the plaintiff of the balance of the purchase price in installments of seven dollars per month. We are at a loss to understand what difference it could make in this case whether the provision referred to was or was not contained in the agreement of the parties. Affirmative relief was not asked for by, nor awarded to, the defendant against the plaintiff. It is not asked, in other words, that the plaintiff's rights under the contract be forfeited because of her alleged nonperformance of the conditions imposed upon her by the contract, and therefore whether she did or did not expressly bind herself by the contract to liquidate the balance unpaid on the purchase price in a particular manner, or at all, is obviously immaterial, and presents no issue of fact essential to the support of the judgment. The proposal to make the proof upon that proposition, however, was inspired by the fact that the supplementary agreement contained no provision of the contract as originally executed whereby the plaintiff agreed to pay the balance of the purchase price by monthly installments in the amount named. Of course, this position assumes that the later writing was intended to supersede or be substituted entirely for the original instrument. But there is nothing in the later instrument indicating that it was intended entirely to take the place of the first, and, while the original was amended by the latter, in so far as the purchase price was concerned, we think that, since the later agreement made absolutely no provision for the payment of the balance of said price, the two were intended to constitute the agreement of the parties, and that they should therefore be viewed as involving a single contract, and as such construed together. So viewing them, the trial court was right in refusing to permit the provision as to the payment of the balance of the purchase price to be stricken from the contract through the force of parol testimony.

The plaintiff made an attempt to show what the oral agreement or understanding of the parties was as to the cost and the character of the cottage which was to be constructed; but the court, upon objection by the defendant, excluded the proffered testimony. This ruling is assigned as error, and prejudicial, counsel for the plaintiff contending that by said

ruling they were prevented from showing that the cottage was not constructed according to the design prepared by the architect for that purpose and of the materials of which it was agreed that the building should be constructed. But we do not think that counsel proceeded in the proper way to make the showing which they claim would have been the effect of the proof offered. The contract specified the purchase price of the building, and also specified the kinds of materials to be used in the construction of the various parts thereof, and to these conditions the defendant was bound to conform. The mere showing of an oral understanding that the cottage was to cost a certain sum and was to be constructed of certain kinds of materials would show no more than the contract itself shows, and itself would not tend to show that the strucure was not completed according to the terms of the contract, the plan prepared by the architect, and the specifications set forth in the contract. The court's ruling did not have the effect of foreclosing the right in the plaintiff to show if she could that the contract was not performed according to its terms or that the building was constructed of materials inferior to those contemplated by the agreement of the parties. Indeed the attorney for the defendant, when making objection to the offer of said testimony, explicitly stated to the court that he had no objection to interpose to any proper effort the plaintiff might make to show that the defendant had in any particular failed to carry out the terms of his agreement in the construction of the house, and, as stated, the court nowhere intimated that the plaintiff would be precluded from doing so.

The court's ruling precluding an answer to the following question propounded to the plaintiff by her attorney is declared to be erroneous:

"Did you tell Mr. Sehested (the party whom she employed to see that the terms of the contract were properly performed) to make any representations to Mr. Fink in the event that the building was not being constructed in accordance with the plans, or merely to report to you?"

The object of that question was doubtless to show the scope of Sehested's authority as the representative of the plaintiff in the transaction. It will be not questioned that the plaintiff was entitled to show how far Sehested's authority as her agent extended, and the above question was proper

for that purpose. But, in view of the fact that the plaintiff had already stated, in reply to a question by her attorney, that "I employed him (Sehested) to look out for my interests and see that the house was built as it should be, according to the contract," the ruling here complained of was without prejudice.

The court disallowed a number of questions propounded by the plaintiff, of which the following is a specimen:

"Now, in your opinion, Mr. Sehested, is a period from about the 1st day of June, 1913, until the 20th day of August of the same year, under the conditions as they existed, the way the house was constructed, a reasonable time for the construction of that building?"

The rulings forbidding answers to that and several other like questions are, it is asserted by the plaintiff, erroneous. We do not think so. The proposition thus sought to be established by the opinion or judgment of the witness constituted one of the important ultimate issues of fact in the case, and its determination was solely and wholly a prerogative of the court. It would have been proper to show by the witnesses all the circumstances and conditions under which the house was constructed; but it was for the court to say upon the facts thus brought before it, considered in connection with the kind of house to be built, what would be a reasonable time for its construction and completion.

It is lastly contended that the findings and conclusions of law are outside of the issues submitted by the pleadings. This position is the outgrowth of the proposition that there is no issue of waiver or estoppel set up in the answer, and that, therefore, the finding and the conclusion of law that the plaintiff waived objections to the variations from the specifications in the construction of the building are without support from the pleadings. It is true that there is no averment of waiver or plea of estoppel in the answer; and it is true, as a general rule, that estoppel is a special defense or plea, which to be available to the party intending to rely upon it, must be pleaded. In this case, however, testimony upon the question of waiver by the plaintiff of objections to the alterations made in the construction of the building was received without objection, and thus the cause tried upon the theory that the waiver referred to was properly an issue. That no objection to the introduction of proof upon that

question upon the specific ground that it was not within the issues was intended to be urged is shown by the statement of one of the counsel for the plaintiff at the beginning of inquiry by the defendant into that proposition. Mr. Shinn, replying to the remarks of the court relative to testimony sought to be brought out by defendant and tending to disclose the plaintiff's knowledge at the time they were made of certain changes in the specifications, said:

"No proposition of waiver is pleaded in the answer. Of course, we are not raising the question particularly."

Thereupon, as before stated, no objection was made to testimony directed to the question of waiver, even the letter of the plaintiff to the defendant of July 28th, which described the color in which she desired the house to be painted, going into the record without protest of any character. That issue must therefore be regarded as having been properly presented by the pleadings.

We think we have now considered and disposed of all the points, urged by the plaintiff in impeachment of the validity of the judgment, which it is conceived call for special notice.

We have thus found no just reason for disturbing the decision of the trial court, and the judgment is therefore affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 30, 1915, and the following opinion then rendered thereon:

THE COURT.—The single point made by the appellant in her petition for a rehearing of this cause is this: That the general rule that a substantial compliance with the terms of a building contract is a sufficient performance of such a contract applies only where the building is erected on a lot owned by the party for whom the structure is to be constructed, and not where, as here, the contractor agrees to erect the building on his own lot in accordance with certain plans and specifications, and to sell the lot and the building as so completed to another for a specified price. The petition correctly states that, in our original opinion, we omitted to notice the dis-

tinction thus suggested, to which attention was invited in a somewhat general way in the briefs filed by the appellant.

In our original investigation of the points presented by the appellant we were not able, as we are still unable, to perceive any logical ground for holding that the rule referred to is any less applicable to a contract such as the one here than to a contract whereby one party binds himself to construct a building upon a lot owned by the other party to the contract. And, as we read the case of *Nance* v. *Patterson Building Co.*, 140 Ky. 564, [140 Am. St. Rep. 398, 131 S. W. 484], cited for the first time in the petition, it does not in fact attempt so to differentiate the application of said rule. Indeed, the opinion in that case, dealing with a contract precisely like the one here in all particulars, unqualifiedly and very explicitly declares that trivial departures in executing the work called for by such a contract will not justify the party agreeing to buy the lot and the house from accepting the same upon the completion of the house.

But, as shown by the original opinion, there are considerations arising in this case which render the rule of "substantial performance of the contract" of no very great importance, so far as the decision of this case is concerned. The several material departures from the original specifications were (as shown in the original opinion) either consented to before they were made or, after made, acquiesced in by the appellant, and, as already in effect held, her contract with respect to those alterations was tantamount to the modification of the original contract in those particulars by the mutual agreement of both herself and the defendant. In this view, the contract was more than substantially performed, so far as are concerned the plan and specifications according to which the structure was to be erected and the character of the materials out of which the house was to be built.

But, taking the other view suggested in the original opinion, viz.: That even if it were true that the appellant did not expressly consent to or acquiesce in the changes, but knew of them at the time they were made without objecting thereto, then, as pointed out in the original opinion, she should be held, upon a familiar equitable principle, to be estopped from complaining of them now. Thus it must at once become obvious that upon no view of the record here can the rule referred to be of overruling importance in the disposition of

this appeal, so far as are concerned departures from the specifications and the kinds of materials used. As to the time within which the building should have been completed, there is, as heretofore shown, no time specified in the contract, and the finding of the court that the contract was completed within a "reasonable time" is conclusive upon this court, there being no showing in the record from which we are authorized to conclude that the court's finding in that regard was not justified. It follows, that, as to that feature of the contract, it is wholly unimportant whether the rule of "substantial performance" is or is not applicable to a case of this character.

We have been shown no reason for receding from the conclusion arrived at in this case, and the petition for a rehearing is therefore denied.