[Civ. No. 4525. First Appellate District, Division One.—July 27, 1923.]

## H. M. ESTES, Respondent, v. W. J. HOTCHKISS, Appellant.

[1] BROKER'S COMMISSIONS—RELATION OF BROKER TO VENDEE—FRAUD —EVIDENCE—APPEAL.—In this action to recover a commission for the sale of a ranch, the contentions of defendant that the broker and the vendee were partners or were jointly interested in the original transaction and the broker did not have that exclusive loyalty to his principal which an agent must have to entitle him to a commission, and that the broker, if not a partner, was an agent of the vendee, did not find support in the record on appeal; and the record not having indicated that any fraudulent means were used by either the broker or the vendee, or that the defense of fraud was relied on at the trial, it could not be entertained as the basis of a reversal.

[2] ID.—PARTIAL ASSIGNMENT TO WIFE—DISCLAIMER OF INTEREST.— In such an action, the defendant cannot successfully contend that an assignment by the broker to his wife of a portion of his interest of his prospective commission is proof that the broker and the vendee were jointly interested and that the wife has made and is making a claim upon defendant for the assigned interest, and that she is threatening to institute an independent action, where the wife, upon being made a party to the action, disclaims any interest of any kind or character in the premises or any right of action against defendant by reason of the alleged assignment.

[3] ID.—DELAY IN COMPLETION OF SALE—RIGHT TO COMMISSION.—In such an action, the defendant cannot avoid payment of the agreed commission on the ground that a certain writing limited the right of the broker to recover his earned commission to the contingency that the principals in the transaction would consummate their contract within a specified time, which they did not do, where after the expiration of that time the principals went on with their negotiations and ultimately completed the transaction and the defendant subsequently agreed in writing to pay the broker the same commission upon modified terms.

1. Right of real estate broker to commission under contract providing for payment of commission out of purchase price, note, 20 A. L. R. 289.

2. When broker has earned commission, notes, 139 Am. St. Rep. 225; 26 A. L. R. 784; 44 L. R. A. 608.

[4] ID.—DEFAULT BY VENDEE—RIGHT TO COLLECT ASSIGNED COMMISSION.—The fact that the vendee permitted default to be made under the original contract of purchase, as the result of which a new contract was entered into, did not estop such vendee, as the assignee of the broker, to force the vendor to pay the agreed commission, where the assignment of the commission was not made until after the services of the broker were performed and the commission earned.

[5] ID.—ASSIGNMENT OF COMMISSION—CONCEALMENT FROM VENDOR—FRAUD — PLEADING—EVIDENCE.—The defendant nowhere in his pleadings having asserted that the broker had in any way acted fraudulently as his agent in negotiating the sale of the property, and it appearing that the broker had fully performed all of the services which he was to perform for defendant in order to entitle him to the commission prior to his assignment thereof to the vendee, the trial court did not commit error in refusing to permit defendant to go into details respecting the apparent concealment for a time of the transfer of the commission to the vendee.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Shortall, Judge. Affirmed.

The facts are stated in the opinion of the court.

Hadsell, Sweet & Ingalls and Creed, Jones & Dall for Appellant.

Ira S. Lillick and Hunt C. Hill for Respondent.

RICHARDS, J.—This is an appeal from a judgment in favor of plaintiff in an action to recover a commission for the sale of a ranch negotiated by one Wm. Holcombe, the plaintiff's assignor.

The facts of the case are as follows: In the spring of the year 1917 the defendant was the owner of the Trahern ranch, in San Joaquin County. On or about the 14th of June said defendant delivered to Wm. Holcombe a memorandum in writing to the effect that, due to the fact that Holcombe had placed defendant in negotiation with Mr. Estes and associates, the defendant was willing to pay a commission of $10,000, if "I make a sale to these people within the next sixty days." The transaction was not completed within sixty days, but under date of November 19, 1917, Estes and defendant entered into an agreement wherein

Estes agreed to buy said ranch for a price of $284,155.55. Of this amount $100,000 was covered by a mortgage by defendant in favor of the Western States Life Insurance Company, which the purchaser assumed and agreed to pay. The balance of the purchase price was covered by a note of the purchaser in amount of $184,155.55, secured by a deed of trust on the property. It will be noted that no money changed hands, Estes merely assuming the above-mentioned obligations and taking over the property. Thereafter Estes assigned to Central Farms, a corporation, composed of himself and associates, his interest in the contract, and under date of February 8, 1918, the defendant received from said Central Farms a promissory note for $184,155.55, with the ranch as security therefor, said note maturing November 19, 1919. During all this time nothing had been received by Hotchkiss and nothing paid as a commission to Holcombe. As evidence that Hotchkiss still intended to pay the commission, however, the following memorandum was delivered to Holcombe:

"W. J. Hotchkiss,
  "San Francisco,
    "101 California Street.
                                    "February 28, 1918.
"This writing is to certify that William Holcombe has acted as broker in the sale by me of the property known as the Trahern Ranch, and for this service I have agreed to pay him the sum of ten thousand dollars as, when, and in the proportion as I receive payment on the purchase price from the purchasers. The purchase price is due on November 19, 1919, with the option on behalf of the purchaser to pay any part of the purchase price, if they so elect, at any time previous to that date. If the purchaser elects to pay any part of the principal sum previous to November 19, 1919, there then becomes due to and I will pay William Holcombe such proportion of the $10,000 which I owe him as the payment made by the purchaser bears to the total amount due on the principal. If the purchaser does not pay any part of the sum due until November 19, 1919, but does pay the total amount due on that date, there will be due William Holcombe and I will pay him at that time the $10,000, but there is nothing in this agreement which would

imply that I am to pay him any part until I have received
payment from the purchasers of the Trahern Ranch.

"W. J. HOTCHKISS."

Under date of June 15, 1918, Holcombe assigned his right,
title, and interest in said commission to H. M. Estes, the
plaintiff herein, but it also appears that in November or
December of 1917 Holcombe had assigned an interest in the
same commission to his wife. Upon failure of Central
Farms to pay the note when it came due, another agreement
was entered into under date of November 29, 1919. The
new agreement exacted certain promises and conditions
affecting the sale of the property and by which they were to
make certain specified improvements. As consideration for
the conditions to be performed the defendant agreed not to
enforce the deed of trust prior to April 1, 1920. Up to this
time Estes had not advised defendant that he was the
assignee of Holcombe's claim for a commission. However,
under date of April 8, 1920, Holcombe wrote the following
letter:

"Mr. W. J. Hotchkiss,
 "101 California St.,
  "San Francisco.

"1138 Bellevista Ave.,
"Oakland, Cal.,
"April 8, 1920.

"Dear Sir:

"In connection with the Trahern Ranch, formerly owned
by you and which through my efforts was sold by you in
March, 1917, to Central Farms Company, composed of Mr.
H. M. Estes and his associates, I understand that a resale
has practically been completed by the latter.

"If my information is correct, you are about to release the
present owners from liability under the trust deed accepted
by you in payment for the land and to agree to the transfer
of title to the new owners, accepting from them a commit-
ment of some kind to be paid later.

"I have delayed making demand on you for payment of
commission due me of $10,000 on original sale, as I had no
wish to embarrass you or Mr. Estes and his associates by
precipitating matters. Under existing circumstances, how-
ever, I believe I should have acknowledgment of your inten-

tions before the present negotiations are concluded and trust you will see fit to do so at this time.

> "Yours very truly,
> "WILLIAM HOLCOMBE."

To this letter he received no reply, and shortly thereafter Estes wrote to defendant, notifying him of the assignment and inclosing a letter from Holcombe to the same effect, receiving the following acknowledgment:

"I accept this notice without in any way acknowledging that I owe Mr. Holcombe anything or that I expect to pay him anything."

Negotiations were thereafter carried on between Estes and his associates and the defendant in connection with the purchase of the ranch, and in September, 1920, Central Farms transferred its interest to the River Junction Farms, Inc., the latter company paying to defendant the full sum due on the promissory note. Under date of October 21, 1920, Estes demanded payment of the $10,000 commission, and upon refusal of Hotchkiss to pay the same commenced this action.

Appellant makes several contentions in support of his appeal. [1] The first two are: One, that Holcombe and Estes were partners or were jointly interested in the original transaction and Holcombe did not have that exclusive loyalty to his principal which an agent must have to entitle him to a commission; and, second, that Holcombe, if not a partner of Estes, was an agent of Estes. Neither of these contentions finds sufficient support in the record. The answer of defendant does not allege that Holcombe and Estes were acting collusively in making this sale. The defendant offered no evidence in support of such a defense, but upon the cross-examination of Estes attempted to cast doubt upon Holcombe's loyalty to him in the transaction. There was no basis for such an insinuation, since it clearly appears that Holcombe merely acted to bring the parties together, and it appears from the record that defendant entered into the agreement without any coercion or misrepresentation whatsoever on the part of the broker. It is true, as heretofore indicated, that very liberal terms were given to Estes in the transaction, but these were in no way attributable to Holcombe. The record as we view it does not indicate that any fraudulent means were used by either Holcombe or Estes; indeed, it does not appear that the defense of fraud

was relied on at the trial. This being so, it cannot be entertained as the basis of a reversal. (*Rogers* v. *Kimball,* 121 Cal. 247 [53 Pac. 648]; *Buck* v. *Canty,* 162 Cal. 226 [121 Pac. 924]; *Hill* v. *Barner,* 8 Cal. App. 58 [96 Pac. 111].) The case of *Glenn* v. *Rice,* 174 Cal. 269 [162 Pac. 1020], relied on by appellant, contemplates an agent "engaged by both parties to effect a sale of property from one to the other . . . *not as a mere middleman to bring them together.*" (Italics ours.) That is not the case here. Holcombe brought the parties in touch with one another and they made their own contract.

[2] Appellant's next contention is that the assignment of Holcombe to his wife of a portion of his interest of his prospective commission was proof that Estes and Holcombe were jointly interested and that "said Harriet E. Holcombe has made and is making a claim upon the defendant herein for said $2500; that unless said Harriet E. Holcombe shall set forth her claim herein and have said claim adjudicated in this action said Harriet E. Holcombe will institute an independent action against this defendant on account of said claim for $2500." Whatever interest Holcombe might have assigned to his wife was thereafter nullified by the fact that upon being made a party to the action, Harriet E. Holcombe, by her answer, disclaimed any interest of any kind or character in the premises and particularly disclaimed any right of action against the defendant by reason of the alleged assignment.

[3] It is attempted to avoid payment of the commission on the grounds that the writing of June 14, 1917, limited the right of the broker to recover his earned commission to the contingency that the principals in the transaction would consummate their contract within sixty days. This might have been true if the defendant, upon failure of the purchaser to complete the purchase within that time, had refused to go on with the transaction; but this was not the case, and the fact that he did go on with the negotiations with Estes and his associates must be held to have amounted to a waiver on his part of that condition in the broker's contract. This is made more apparent by the fact that defendant entered into an extension contract with the party obtained by Holcombe as a prospective purchaser, and thereafter agreed in writing to pay Holcombe the same commis-

sion upon certain modified terms. This would seem to imply that the intention of the parties was to regard the agreement to pay the commission as a continuing one, dependent upon the final completion of the transaction and sale of the property to Estes or his assignees.

The claim is made that even under the subsequent promise to pay, the commission was not earned as the purchase price was not paid on or before November 19, 1919; that the price was not paid by Central Farms, Estes, McMillan, or Silva, and that Holcombe, Estes, McMillan, Silva, and Central Farms were not parties through whom the defendant received the payment of the money derived from the final sale of the property. As we view it, the transaction was a continuing transaction from the time of its original negotiation down to the time of its final sale to the River Junction Farms, Inc. The assertion of defendant that the purchase price was never paid by Central Farms, but by River Junction Farms, is not borne out by the facts. Central Farms held the legal title to the property by virtue of the deed by Hotchkiss to it, and the sale by Central Farms to the final purchasers necessitated payment by it, to Hotchkiss, of the amount secured by the deed of trust upon the property.

[4] The contention is made that Estes, as holder of the claim, could not permit the default to happen, and as one of the principals, participate in and help to arrange the new bargain, and still claim the commission, and also that the original transaction, wherein alone Holcombe rendered service, was never consummated "in such way that any moneys came in hand from which commissions would be payable." It appears that Holcombe performed all that had been expected of him, and nothing remained to be done but for the purchasers to carry out on their part the negotiations to a completion. Moreover, it appears that Estes had no interest in the commission until after the work of Holcombe in the transaction had been fully performed. As before stated the transaction viewed as a whole amounts to a fulfillment of the conditions under which Hotchkiss was to pay Holcombe or his assigns a commission.

Appellant also urges several grounds of alleged error, not included in his original specifications, but sufficiently covered by their discussion, as for example, he complains that the court did not permit him to cross-examine Holcombe with

reference to the assignment of an interest in the commission to his wife. But since, as we have seen, said assignment was canceled by the parties thereto and Mrs. Holcombe had filed a disclaimer of any interest in the commission as a result thereof the court properly restricted the defendant's cross-examination of Holcombe upon that subject.

[5] The appellant also complains that the court did not permit him to go into details respecting the apparent concealment for a time of Holcombe's transfer of his right to said commission to Estes, but since the defendant nowhere in his pleadings asserted that Holcombe had in any way acted fraudulently as his agent in negotiating the sale of the property, and since it further appears that Holcombe had fully performed all of the services which he was to perform for the defendant in order to entitle him to said commission prior to his assignment thereof to Estes, it would seem that the defendant's effort to go into the subject of the subsequent relations between Holcombe and Estes upon cross-examination of the latter would have been futile.

It is also urged that the trial court erred in giving certain instructions to the jury and in refusing to give certain instructions requested on behalf of appellant. The appellant offers very little reasoning and no authorities tending to show that the instructions of the court, when read as a whole, were not fairly responsive to the issues submitted to the jury.

The judgment is affirmed.

St. Sure, J., and Tyler, P. J., concurred.