[Civ. No. 6519. First Appellate District, Division One.—January 16, 1929.]

A. MOORE, Respondent, v. C. J. BORGFELDT, Appellant.

Edward A. O'Brien for Appellant.

Gerald C. Halsey and Frederick T. Lee for Respondent.

BARNARD, J., *pro tem.*—This action was brought to recover for services claimed to have been rendered to defendant by plaintiff's assignor, one Edward R. Hayden, as a real estate broker. The following facts appear from the evidence: The defendant owned an apartment house at 510

Stockton Street, San Francisco, encumbered by a mortgage for $40,000. Early in 1925 he stated to plaintiff's assignor that he was desirous of selling this property. Although the agent had several prospects, he did not succeed in selling the property, and in October there was another conversation in which the defendant said, "Hayden, I will tell you frankly I am very anxious to sell this property." He priced the property at $90,000 and the agent replied that he would specialize on selling it, and then suggested the possibility of making a trade for what was known as the Lee Garage on Eddy Street, in the same city, a property known to the defendant. This Lee Garage was subject to a first mortgage for $45,000 and a second deed of trust for $39,800.

After considerable negotiation the defendant finally stated what he would do, a memorandum of which was written by the broker, signed by the defendant with his initials and delivered by him to the broker. This memorandum was as follows: "I will take Lee Garage deed of trust for $39,800.00 and $3200.00 cash, for 510 Stockton Street, subject to $40,000 loan. Offer good for twenty-four hours. Commission all over and in excess of the above amount. Dated December 17, 1925. C. J. B."

Within the period named the broker secured an acceptance of this proposition from the owner of the deed of trust, and so informed defendant. Thereupon the defendant, desiring to procure better terms, suggested that instead of the second deed of trust and the $3,200 cash aforesaid, he preferred to obtain, in exchange for his property, the legal title to the Lee Garage itself, subject only to the first mortgage for $45,000. Accordingly, with the knowledge and consent of defendant, the broker proceeded along that line. After about two weeks' further work, the broker secured the consent of all parties concerned, the desired result was accomplished, and the deal put through on that basis, deeds being exchanged on December 31, 1925. As to the broker's part in the deal, the defendant testified as follows: "Q. He closed the deal for you, didn't he? A. Yes, he closed it." It also appears from the evidence that this broker had acted as agent for the owner of the Lee Garage, and at some time prior to this deal had attempted to sell to the defendant both the Lee Garage and the above-mentioned second deed of trust thereon. The defendant refus-

ing to pay a commission, this action was brought. The complaint contains two counts, the first alleging an agreement to pay a commission of $7,000, and the second for the reasonable value of the services rendered, which is alleged to be $7,000. A trial by jury resulted in a verdict for $2,375 in favor of plaintiff, and this appeal is from such verdict and the judgment based thereon.

Appellant's principal contention is that the memorandum above set forth is not sufficient written authority under subdivision 6 of section 1624 of the Civil Code, and, therefore, the same should have been excluded from evidence. The claim is that the memorandum is a mere offer to sell, that it is not addressed to anyone, does not employ anyone to sell the property, and does not agree to pay any commission, merely providing that in a certain event an excess amount could be collected as a commission from the purchaser of the property. On this point appellant mainly relies on the following cases: *Kleinsorge and Heilbron* v. *Liness,* 17 Cal. App. 534 [120 Pac. 444], *Toomey* v. *Dunphy,* 86 Cal. 639 [25 Pac. 130], and *Patterson* v. *Torrey,* 18 Cal. App. 346 [123 Pac. 224]. The argument is made that these authorities fix the law to the effect that a writing authorizing a certain named person to sell one's property is binding without mention of the payment of a commission, and also that such a writing addressed to a certain named person, quoting terms and an agreement to pay a commission, binds the signer, without an express statement of employment, but that this is as far as these cases or any other cases do or can go. And that, under the statute, no written memorandum is sufficient unless the person claiming the commission is *specifically named* therein.

In our opinion the above cases and the other cases cited do not support this position. In the case of *Kleinsorge and Heilbron* v. *Liness,* and in the case of *Patterson* v. *Torrey,* it was held that the respective writings relied upon showed only an offer, and failed to show any employment or authority to act. In the case of *Toomey* v. *Dunphy,* on the other hand, it was held that the writing, though silent as to compensation, did authorize the agent to sell the property. However, all these cases, and many others, hold that the chief element in the requirement of this statute is that there be some written evidence of the fact of employment,

in other words, the authority to act, and that unless some written memorandum exists sufficient to show such authorization, a claim for a commission cannot be maintained.

In *Kennedy* v. *Merickel,* 8 Cal. App. 378, at 381 [97 Pac. 81], the court says: "A writing signed by the owner and addressed to the broker expressly or impliedly acknowledging his authority to act as agent for the purpose of the sale is a sufficient compliance with the statute, . . . it is sufficient if it be shown that the party to be charged has recog.. nized the broker as his agent by a writing subscribed by him." The statute does not require a complete written contract, but a mere note or memorandum showing authorization is enough. It is sufficient if it shows that the agent is authorized to find a purchaser ready, willing, and able to buy or exchange, or one with whom a sale or exchange is actually made. The writing in question here provides for the payment of a commission to be paid by the seller, not someone else, though limited to any excess obtained over a given price. If not expressly, it certainly impliedly gives authority to make the sale. It does not mention the name of the agent, but while we have found no case holding this is not necessary, none has been cited holding it to be essential. The cases relied on do not go that far. On the contrary, these cases hold that the agreement to pay a commission, and the express or implied authority to act, satisfy the requirements of the statute. And the agreement to pay a commission, in itself, certainly implies authority to act. Under the circumstances surrounding the written memorandum in this case, the authority to act is clear, and there is "some note or memorandum signed by the party to be charged." In the instant case the owner has, in writing, recognized someone as his agent. He delivered the authorization to plaintiff's assignor, in connection with a deal then pending, and then continuing with the deal and accepted the results of the broker's labor. The written memorandum being, in our opinion, sufficient to meet the requirements of the statute, it was properly admitted in evidence. And the identity of the agent was properly shown by parol.

A second contention, closely related to the first, is that the memorandum relied upon must be complete in itself, and that it cannot be enlarged or modified by parol.

And further, that to admit testimony of the other facts above set forth, constitutes an attempt to so enlarge and modify the writing as to be, in effect, the substitution of an entirely new oral contract. As we have pointed out, the writing need not be a complete contract, but only a note or memorandum, provided it shows authority to act. When this requirement is met in connection with a definite piece of property, the other terms may be shown by parol. The amount of compensation, and even the agreement to pay a commission, may be so shown. (*Toomey* v. *Dunphy, supra.*) When such other terms may be thus proved, after written authority shown, it follows that changes in the terms may also be so proved, and where such oral changes have been made and executed they are valid. (Civ. Code, sec. 1698; *Anderson* v. *Adler,* 42 Cal. App. 776 [184 Pac. 42].)

Appellant cites *Boyd* v. *Big Three Ranch Co.,* 22 Cal. App. 108 [133 Pac. 623], as authority for the proposition that there may not be an oral modification of the memorandum in such a case as this. That case held only that a writing showing authority to sell land could not be orally modified, by making it apply to a different parcel of land. That is very far from holding that where written authority to act exists, the terms may not be orally modified. For instance, if the selling price be changed by oral agreement, and this is acted upon and the deal completed, it cannot be doubted that a commission may be collected. (*Twogood* v. *Monnette,* 191 Cal. 103 [215 Pac. 542].) In the case before us we have, in effect, not a substituted agreement but a change in the selling price. That is, the appellant took as the purchase price of his property, not the property (the deed of trust and the cash) mentioned in the memorandum, but another property (the Lee Garage) closely connected with the original offer. It was the same property being sold, under the same employment, the same original buyer was a necessary party to the sale as consummated, and even the property received by appellant, though different in form, was in all probability, essentially the same as he had proposed to accept, the changed terms being considered by him as more advantageous to himself. Parol was then properly received to show these changed terms. The evidence shows this was one continuing transaction.

■  The limitation of time mentioned in the writing was waived by appellant's continuing with the deal, through the same broker, after the expiration thereof. (*Umphray* v. *Hufschmidt*, 73 Cal. App. 140 [238 Pac. 749]; *Estes* v. *Hotchkiss*, 63 Cal. App. 284 [218 Pac. 605].)

■  Appellant further contends that the amount fixed by the jury, being apparently the reasonable value of the services rendered and not the amount alleged to have been agreed upon, shows that the jury really found no agreement as to commission existing, otherwise they would have followed the agreement. There was evidence that the value of appellant's apartment house, which was sold, was $90,000, and that the reasonable value of the services rendered by plaintiff's assignor was the real estate board's rate of five per cent on the first $5,000 and two and one-half per cent on the balance. This totals $2,375, the amount of the verdict. As we have seen, the terms of this agreement were modified, changing the form of the purchase price received in such a way as to make it almost impossible to tell how much more was actually received by appellant for his property than his asking price. As the court said in *Naylor* v. *Adams*, 15 Cal. App., at page 555 [115 Pac. 338]: "It is a settled rule in this state that where the terms of a special contract have been varied or modified by the agreement of the parties, the action for the amount due for work and labor should be in the form of *indebitatus assumpsit*, and not upon the contract." The proper measure of recovery in this case was the reasonable value of the services rendered. This is especially true since it is the rule in this state that "a recovery may be had for the reasonable value in an action based on a common count although the proof shows a written agreement." (*Umphray* v. *Hufschmidt*, *supra*; *Naylor* v. *Adams*, *supra*.) The justice of the application of this rule to the instant case is apparent, the appellant having agreed to pay a commission, contingent though it was, and having later, at his own request, and for his own benefit, changed the terms so that the original rate of commission is of most difficult, if not impossible, application. Strictly speaking, however, the result would be the same were this not the rule properly applicable here. While, as a practical matter, it is difficult to tell how much more than his written asking price, appellant actually received,

there is some evidence on this point. There was testimony that the property he received was of the value of $90,000, and in his written memorandum he values his own property at $83,000, assuming the trust deed to be worth its face. While a verdict for the difference, or $7,000, might not have approximated justice as closely as the verdict actually rendered, it would have been sustained by the evidence, and appellant cannot complain that the amount of the verdict is less than might legally have been awarded by the jury.

If, as claimed by appellant, it was actually understood between himself and the agent that no commission should be paid on the deal as finally put through, it would have been an easy matter for him to protect himself by a few written words. Having signed the memorandum for the apparent purpose of complying with the statute, and being evidently a man of affairs, he should have seen to it that so unusual a situation was covered. The purpose of this statute is to protect the owner of real property, not from every claim of a commission for selling the same, but from claims from persons never by him employed or authorized to act. It is equally the policy of the law to protect a broker who has been so employed or authorized, and who, in good faith, has acted. And where an owner signs a sufficient authorization, asks for and obtains particular changes in terms, keeps the agent at work, promises to sign a further agreement but neglects to do so, and accepts both the services of the broker and the results thereof (all of which facts are shown by the evidence in this case), he may not escape the payment of a commission by showing variations in the terms not going to the fact of employment. And this must have been within the intention of the legislature, or they would have provided that the entire contract must be in writing, and not merely "the same, or some note or memorandum thereof."

As conceded by appellant the verdict of the jury has settled all conflicts in the evidence. For the reasons given, the grounds urged for reversal are without merit.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 13, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 14, 1929.

All the Justices present concurred.