[Civ. No. 4480. Third Appellate District.—January 9, 1932.]

CHARLOTTE ESTELLE FULLER, etc., Appellant, v. CHARLES S. MANN, etc., et al., Respondents.

Rush & Bierne for Appellant.

Joe Crail, Harold C. Morton, Fredericks, Hanna & Morton and E. A. Penprase for Respondents.

PRESTON, P. J.—An action in equity to compel an accounting and to establish a trust in certain property.

The case was tried before the court without a jury and judgment went in favor of the plaintiff and against defendant Charles S. Mann for $351.05 and against Citizens Trust and Savings Bank for $243.51. From this judgment, the plaintiff Charlotte Estelle Fuller prosecutes this appeal.

The material facts are not in dispute and are briefly these: In the year 1919, Mrs. Fuller, the plaintiff and

appellant herein, owned 315 acres of land in Los Flores canyon in Los Angeles County. This property was mortgaged for $6,000, which was due and unpaid. There were also delinquent taxes against the property.

Appellant was very anxious to sell the property in order to save her equity therein. She had considerable negotiations with respondent Charles S. Mann relative to employing him as her agent to negotiate a sale of said property. Finally, on July 7, 1919, a written agreement was entered into between appellant and respondent, Charles S. Mann, reciting the ownership of the land by appellant, and that respondent had prepared a plan for developing and disposing of the property (a copy of which plan was attached to and made a part of the agreement), and further reciting that appellant desired to have the assistance of respondent in developing and disposing of the property, and utilizing the plan proposed by said respondent.

The contract gave to respondent the exclusive right to carry out the purposes of the plan, and, among other provisions, the contract provided as follows:

"To sell, or agree to sell, on or before ninety days from date hereof, twenty-five one-one hundredth (1/100) interests in said property at a price of four hundred ($400.00) dollars for each one-one hundredth (1/100) interest agreed to be purchased; out of which sum shall be paid first, the amount of said mortgage, together with all accrued interest, taxes, etc., and, second, such commissions and expenses as may have been created by Chas. S. Mann in selling and disposing of said interests."

The agreement then provides that after the completion of the sale of the twenty-five units above set forth, respondent should have the right to dispose of twenty-five additional units at the price of $500 each unit, of such amount one-half was to be paid to the appellant as received, and the other one-half was to be paid to the respondent, out of which he was to pay all expenses of the sale in connection therewith; the respondent to have one year in which to dispose of the additional twenty-five units. It was then provided that, upon the completion of the second twenty-five units and "within the time specified", the remaining fifty units should be divided equally between appellant and

respondent. The agreement also provides that the title to the property should be held in the name of a trust company, which would issue certificates of ownership and hold title to the property.

While the agreement provides that the defendant "should sell or agree to sell" the first twenty-five units on or before ninety days from the date of the agreement, it appears without conflict that the conveyance was not made to a trustee and a trust *was not created until more than 90 days after the date of the agreement.*

It further appears that during the ninety days immediately following the execution of the agreement, the respondent attempted to interest various persons in the project, planned a road to the property so that it would be accessible and investigated the feasibility of the plan in various ways, etc.

After the ninety days had expired, respondent advised appellant that he believed the plan would be a success, and it was after that time the property was deeded to the trustee and the trust created. It also appears that respondent arranged for a loan of $6,000 from the trustee to pay off the mortgage existing on the property, and also deposited collateral of his own, in addition to the trust estate, as security for said loan.

During the interval from the date of the contract, July 7, 1919, to the creation of the trust, respondent paid interest on the mortgage and advanced other sums for and on account of the development of the property.

After the trust was created, respondent proceeded to have the property improved and to sell the units. The sale of the first twenty-five units being made over a period of about three years. During this period of time, respondent advanced money for the protection and upkeep of the property, all with the consent and approval of appellant. Among other things done by respondent, he employed a man referred to him by appellant to stay upon and look after the property during the time the units were being sold; also that some of the units were sold for more than $400, and some for less, but all sales were made with the consent and approval of appellant.

Appellant admitted that she did not know how soon he was going to sell the first twenty-five units and that she knew he could not commence to sell the units until the trust was created by the bank. She further testified that she left it to respondent to sell the units and expected him to use his best judgment in connection with the matter, and that she made no objection after the time within which respondent was taking to sell the units and that she was satisfied, at the time, at the way in which sales were being made. After the first twenty-five units were sold, respondent then entered upon the sale of the second units, which instead of being sold for $500 each, as provided in the contract, were sold for more, some being sold for $750 per unit.

The negotiations of the sale of the second units were entirely agreeable and satisfactory to appellant and she left it to respondent to fix prices. After five of the second twenty-five units had been sold, respondent and appellant then agreed orally to a division of the remaining units, each to take one-half of them, the appellant to sell three of her units to a purchaser then available, so she could get ready money. Each of the parties received thirty-five units on this division and then both believed at this time that the units were worth $750 each. At the time of the trial, appellant testified that the units had enhanced in value and the prices of her units were $2,500 each.

The appellant knew that respondent would sell his units at a price higher than $500 and seemed entirely satisfied with the division and the entire transaction.

About two years after the division, this action was brought without previous notice or demand.

The complaint makes certain specific charges against the respondent, which we will briefly summarize as follows: That respondent without consideration and without the knowledge or consent of appellant caused thirty-five of the units to be issued to him; that respondent did not sell the first twenty-five units within the time and the price agreed upon, and, in violation of the terms of the agreement, etc.; that respondent had diverted sums of money which belonged to appellant to his own personal use; that respondent had entered into sales or contracts for the sale of the units under

fictitious names; that appellant had demanded an accounting which had been refused; that respondent had received from the sale of the units sums of money for which no account had been made; that respondent had refused appellant an inspection of the books.

All of these allegations were denied by respondent in his answer.

As above stated, appellant's own testimony shows that the division of the units was made with her full consent, knowledge and approval, and because it was deemed advantageous to her.

There was no proof that appellant was wrongfully charged with the expense of sales or that funds were diverted by respondent for his own use or that demand was made for an accounting. Neither was there any proof of fictitious sales, or refusal on the part of respondent to permit his records to be examined.

In fact, none of the charges in the complaint was sustained, except the allegation that the first twenty-five units were not sold within ninety days after July 7, 1919.

At the conclusion of the trial, the court found in favor of the respondent in the main and entered judgment and findings accordingly.

■ Appellant contends that the trial court erred in denying her motion to strike out certain portions of the testimony of the respondent, which were in conflict with the terms of the original agreement. This testimony related to the waiver of the ninety-day period within which the first twenty-five units were to be sold and, also, to the oral agreement between the parties to divide the seventy units.

We think the evidence clearly shows that appellant waived the ninety-day period within which the first twenty-five units were to be sold.

The law is well settled that performance under such contract could be waived by appellant, who was the party entitled to performance. (*Boone* v. *Templeman*, 158 Cal. 292–294 [139 Am. St. Rep. 126, 110 Pac. 947]; *Estes* v. *Hotchkiss*, 63 Cal. App. 284 [218 Pac. 605]; *Umphray* v. *Hufschmidt*, 73 Cal. App. 140–144 [238 Pac. 749]; *Moore* v. *Borgfeldt*, 96 Cal. App. 306–312 [273 Pac. 1114]; *Redd* v. *Garford Motor Truck Co., Inc.*, 205 Cal. 245–249 [270

Pac. 447] ; *Fickbohm* v. *Knaust,* 103 Cal. App. 443–447 [284 Pac. 692].)

The oral agreement between the parties that they would divide seventy units instead of fifty was fully executed and binding upon the parties.

The written agreement of July 7, 1919, provided that after fifty units had been sold, the remaining fifty would be divided equally between the parties. Instead of doing this, they agreed orally to divide seventy units after thirty had been sold. The division was actually made according to their oral agreement, and no complaint or objection was raised by appellant until about two years after the division. Such oral modification of a written instrument is binding. (Civ. Code, sec. 1698; *Anderson* v. *Alder,* 42 Cal. App. 776–779 [184 Pac. 42, 43] ; *Oatman* v. *Eddy,* 4 Cal. App. 58 [87 Pac. 210] ; *Miles* v. *Zadow,* 87 Cal. App. 406 [262 Pac. 396].)

In *Anderson* v. *Alder, supra,* the court said:

" 'A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise.' (Civ. Code, sec. 1698.) An executed agreement is one the terms of which have been fully performed. (*Henehan* v. *Hart,* 127 Cal. 656, 657 [60 Pac. 426].)

"When, therefore, the trial court, on sufficient evidence, found the existence of an executed oral contract modifying the terms of the original lease as to the rent, and further found that it had been fully performed, it finally settled the issues of this case."

There is no question but that a good consideration existed for the executed oral modification of the written contract. The respondent had the right to sell the remaining units at the price of $500 and receive one-half of the selling price, the units at the time of the division being worth more than that sum. Appellant desired to have the division made in order that she might sell three units to a customer then available and receive the entire purchase price therefor.

We think the evidence above set forth also clearly shows that appellant was estopped to question the time of performance as to the sale of the units, and, also, estopped to question the division of remaining units after such division

was made. (*Giberson* v. *Fink*, 28 Cal. App. 25 [151 Pac. 371].)

.We are therefore of the opinion that it was entirely proper to admit evidence to show oral changes which the parties made in the written agreement as to the time of performance and a division of the units, and the motion to strike out was properly denied.

Appellant also contends that the findings are inconsistent and irreconcilable. We have examined all the findings with care and find no substantial merit in this contention.

The court determined that the transaction was in all respects fair and equitable and we find no valid reason to disturb the conclusions and judgment of the learned trial court.

The authorities relied upon by appellant have no application under the facts of this case.

We think the evidence fully supports the material findings and that the judgment should be affirmed, and it is so ordered.

Thompson (R. L.), J., and Plummer, J., concurred.