## C. AUGUSTUS LUCKHART *v.* RICHARD L. OGDEN, AND PAUL J. GIFFORD.

ENLARGEMENT OF TIME TO PERFORM CONTRACT.—What evidence sufficient to prove a verbal agreement to extend the time for the performance of a written contract, considered.

WHO TO SIGN EXECUTORY CONTRACT.—An executory contract by the terms of which one party is to perform work in the future in consideration of a conveyance

already made to him.of property by the other party, need only be signed by the party to perform in future.

TIME FOR PERFORMANCE OF CONTRACT. — When an agreement for the enlargement of the time within which a contract was to be performed is silent as to the duration of the extension, the law implies that the extension will be for a reasonable time.

MEANING OF AGREEMENT. — It is for the Court to determine whether letters which have passed between parties constitute an agreement between them.

AGREEMENT TO ENLARGE TIME TO PERFORM CONTRACT. — An agreement in general terms to enlarge the time for the performance of a contract, which contract provides for several things to be done within a specified time, enlarges the time for the performance of all the acts in the contract.

MEANING OF AGREEMENT A QUESTION OF LAW. — Whether an agreement between parties amounts to an extension of time for the performance of a former contract between them, and if so, what time, are questions of law for the Court and not of fact for a jury.

IS THE QUESTION OF REASONABLE TIME FOR THE COURT OR JURY? — When a contract is to be performed within a reasonable time, the question—what is a reasonable time?—is one of law to be determined by the Court from the facts established.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The following is the contract upon which the action was brought:

" This indenture, made the 31st day of August, in the year of our Lord one thousand eight hundred and sixty-three, between Richard L. Ogden and Paul J. Gifford, of the City and County of San Francisco, parties of the first part, and C. Augustus Luckhart, of the City and County of Los Angeles, party of the second part;

" Whereas, by an instrument in writing bearing date on the 13th day of April, 1863, between J. D. Cusenberry and others, discoverers and sole owners of certain mining ground or property in La Paz Mining District, in the Territory of New Mexico, of the first part, and the said C. Augustus Luckhart of the second part, the said parties of the second part thereto conveyed in fee and absolutely to the said Luckhart, an undivided half of said property, and the said Luckhart, in consideration thereof, agreed in substance to incorporate the parties interested in said property and open the said mines, as will more fully and at large appear by reference to said instrument;

"And whereas, the said Luckhart hath agreed to sell and

convey, and by a deed of even date herewith, hath in fact conveyed to the said parties of the first part hereto, the said mining property or mineral ground;

"Now this indenture witnesseth, that the said parties of the first part, for-and in consideration of the said conveyance so made to them as aforesaid, do undertake, promise, and agree to and with the said party of the second part, in manner and form following:

"1. They, the said parties of the first part, will, on the part and behalf of said Luckhart, and in his place and stead, perform and fulfil the contract aforesaid between the said Luckhart and Cusenberry, and others, of the 13th April, 1863.

"2. At any time at or before the expiration of six months from the date hereof, the said parties of the first part having performed the foregoing covenant to that time, they may abandon their purchase, and upon reconveying to the said party of the second part the property by him conveyed to them, unimpaired and unencumbered, with warranty against their own acts, then they shall be thereby discharged from this contract.

"3. At or before the expiration of said six months from the date hereof, the parties of the first part not having abandoned the purchase and reconveyed said property as above provided, shall pay to the party of the second part the sum of three thousand dollars in gold coin of the United States.

"P. J. GIFFORD.     [Seal.]

"R. L. OGDEN.     [Seal.]"

The other facts are stated in the opinion of the Court.

*B. S. Brooks*, for Appellants, argued that the contract was a mutual covenant of indenture, intended to be executed by both parties, and was of no effect until thus executed. He also argued that the contract was not of itself evidence of a breach of its terms, but that plaintiff should have proved a breach; and cited 1 Phillips on Ev. 492; Cow. & Hill's Notes, 345; and *Lent et al.* v. *Padelford*, 10 Mass. 233. He also argued that it was the duty of the Court to have determined,

as a question of law, whether the letters amounted to a contract, and that the Court should then· have charged the jury that the letters contained a valid contract, and that the Court should also have construed the contract contained in the letters and charged the jury what its effect was, and told them that the effect of the letters was to give defendants a reasonable time to complete the contract; and cited Chitty on Con. 629; *Sanson* v. *Rhodes,* 8 Scott, 544; *Atwood* v. *Cobb,* 16 Pick, 231; *Roberts* v. *Beatty,* 2 Penn. 63; *Phillips* v. *Morrison,* 3 Bibb. 105; *Sawyer* v. *Hammond,* 15 Me. 40; *Howe* v. *Huntington,* 15 Me. 350; *Atkinson* v. *Brown,* 20 Me. 67. He also argued that it was not for the jury to have determined what was a reasonable time for the performance of the contract; and cited *Atwood* v. *Clark,* 2 Greenl. 299; *Kingsley* v. *Walles,* 2 Shepl. 57; *Howe* v. *Huntington,* 3 Shepl. 320; *Green* v. *Dugley,* 24 Me. 137.

*C. H. Parker,* for Respondent, argued that as the answer admitted that the defendants executed the contract for a valuable consideration given them by the plaintiff, and as the defense consisted only of new matter set up by way of confession and avoidance, that plaintiffs were not required to introduce any evidence but the contract itself in order to make out a *prima facie* case; and cited 10 Cal. 558; and 10 How. Pr. 166. He also argued that the questions concerning the letters, whether they amounted to a contract, and what the contract was, and what was a reasonable extension, were all questions of fact for the jury; and cited *Kimball* v. *Gearhart,* 12 Cal. 27; 15 Id. 271; Story on Cont., Sec. 970; 1 Greenl. Ev. 69; 3 Comst. 272; 1 Ky. (Dana,) 30. He also insisted that the authorities cited by appellant's counsel, although sound in view of the circumstances of each case, were not applicable to this case, but that it was peculiarly appropriate that the facts of this case should go to the jury.

By the Court, CURREY, C. J..

On the 13th of April, 1863, J. D. Cusenberry and others, the discoverers of certain mines in the La Paz Mining District, in the Territory of New Mexico, conveyed to the plaintiff one undivided half of the property in fee, in consideration whereof the plaintiff covenanted and agreed to incorporate the parties interested in the property and open the mines. On the last day of the month of August of the same year, the plaintiff conveyed to the defendants his interest in said mining property, in consideration whereof they covenanted and agreed to and with him to perform on his behalf and in his place and stead his contract with Cusenberry and others. The contract between the defendants and plaintiff further provided that at any time before six months from the date had elapsed, they might, provided they had at the time proceeded with the performance of their covenant to fulfil the plaintiff's contract with Cusenberry and others, abandon their purchase; and upon reconveying to him the same property unimpaired and unencumbered, with warranty against their own acts, they should be thereby discharged from their contract with the plaintiff; but in case the purchase was not so abandoned, and the property was not so reconveyed to the plaintiff, that they should pay to him the sum of three thousand dollars in gold coin of the United States.

This action was brought on the contract executed by the defendants to recover the sum of three thousand dollars in gold coin, with interest thereon at the rate of ten per cent per annum from the 1st of March, 1864. The defense to the action is, in substance, that the time for performance of the contract, and also the time within which the defendants had the option to abandon it and reconvey to the plaintiff, was enlarged by the contract between the parties, and that the action was in fact commenced before such extended time had expired, and therefore before the defendants were guilty of a breach of their promise to pay the sum of money above mentioned. After the action was commenced the defendants,

acting upon the hypothesis that they had the right to abandon the contract and reconvey to the plaintiff, executed, acknowledged and tendered to him a deed in due form, purporting to convey to him the property by him conveyed to them, which deed they brought into Court, with their answer, ready to be delivered to the plaintiff.

The case was tried before the Court and a jury, who rendered a verdict for the plaintiff for the principal sum demanded in the complaint, with interest thereon from the 1st of March, 1864, upon which judgment was entered. A motion was made on behalf of the defendants for a new trial, which was denied, and the appeal is from this order and also from the judgment.

The evidence in the case showed that after the contract was entered into between the parties the defendants entered upon their undertaking to open the mine and prosecuted the work feebly for some time on account of the want of the necessary means and supplies for the purpose; and that prior to the expiration of the six months within which they were to make their election whether to proceed to the fulfilment of their engagement, or to abandon it, they, in anticipation of their inability to complete the work within that period, applied to the plaintiff for an extension of time, and at the same time informed him that unless it was granted the defendants would be compelled to avail themselves of the election which they had reserved of abandoning the enterprise; accordingly an extension was granted, but no term thereof was agreed upon. About the middle of April, 1864, the defendant Gifford, who had been at the mine, visited the plaintiff at his residence, at Los Angeles, and, after having given him an account of affairs at the mine, applied for another extension. Gifford testified that he told the plaintiff it was necessary the defendants should have six months or a year more, and that unless he gave it they would be compelled to abandon the contract and reconvey; and that in reply the plaintiff said he did not wish them to reconvey, and if they would not he would give them all the time they wanted. That he was intending to go to

San Francisco and would see both defendants and make everything satisfactory. That the parties with whom he had contracted (evidently referring to Cusenberry and others) would do anything he agreed to. The plaintiff testified on his own behalf, giving a different version of the conversation respecting which Gifford testified. He admitted that Gifford applied for an extension of the time in which to perform the contract, and that he made a proposition to Gifford to enable him, the plaintiff, to assist the defendants in obtaining such extension. The proposition was that Gifford should furnish the plaintiff with sufficient means to enable him to proceed to San Francisco, which it was necessary he should do in order to obtain from Cusenberry and others an extension of the time within which he, the plaintiff, was bound by his contract with them to perform the work of opening the mine; and he says he told Gifford that if he could go to San Francisco he would make it " all right—satisfactory to all parties." To which Gifford made no definite answer. It does not appear that Gifford furnished the plaintiff any money to enable him to proceed to San Francisco. After the plaintiff had thus stated, Gifford was recalled, and on behalf of defendants testified that at the conversation mentioned the plaintiff did not make it a condition of his proceeding to San Francisco that he, Gifford, should furnish money to pay his expenses; but he added that the plaintiff said he had no money to pay his expenses, and asked this witness to let him have some—that he had no money and could not go to San Francisco unless he could get the money from him, Gifford, for the purpose. This, in fact, is in corroboration of what the plaintiff testified. The plaintiff, it seems, expressed a willingness on his part to extend the time for the fulfilment of the contract on the part of the defendants, but in order to be able to do so he told Gifford of the necessity of seeing Cusenberry and others to whom he was bound, and for that purpose that he must visit San Francisco, and in order to do so he required means, which he asked Gifford to furnish, but which were not furnished. We

70

are clearly of the opinion that the evidence of what passed between the parties in April, at Los Angeles, does not prove an agreement to extend or enlarge the time for the performance, on the defendants' part, of the work they had by their contract undertaken to do.

After the plaintiff had introduced in evidence the contract between the parties and rested, the defendants moved the Court to grant a nonsuit on the grounds—first, that the plaintiff had proved no contract between the parties; second, that he had proved no breach of the contract; and third, that he had proved no demand of the money before bringing the action. The motion was denied and the defendants excepted.

### An executory contract.

I. The reason assigned in support of the first ground of the motion for a nonsuit was that the contract was not executed by the plaintiff. The execution of the contract was not denied by the defendants, but expressly admitted; but the objection raises the question of its validity, because it was executed by only one of the parties to it. The answer to this objection is that the consideration for the defendants' covenants contained in the contracts executed by them was rendered and performed by the plaintiff by the conveyance to them of his interest in the mine, and thus was completely executed, while on their part the consideration for such conveyance was still to be rendered and performed, and thus was executory. The contract did not provide for the performance of anything by the plaintiff, and therefore it was not necessary he should sign it. The judgment of the Court is that the contract was well executed.

### Extension of time to perform a contract—Proof of.

II. The plaintiff sued upon the contract as written, and alleged that by its terms and conditions there was due him three thousand dollars in gold coin of the United States, with interest thereon from the 1st of March, 1864. By the con-

tract the defendants promised to pay the plaintiff the principal sum named at the expiration of six months from the date thereof, in case the purchase was not abandoned and the property reconveyed, and by the complaint it was alleged that the defendants had not so abandoned and reconveyed, nor had they paid said sum of money or any part of it. The defendants did not deny the execution of this contract or sufficiently deny any material allegation of the complaint; but they plead two extensions by the plaintiff of the time for them to perform it or elect to abandon their purchase and reconvey the property. The execution of the contract being admitted, there was nothing on the part of the plaintiff to prove in order to establish a breach of the promise of the defendants therein contained to pay the sum stipulated, as the six months specified, and a much longer time, had elapsed prior to the commencement of the action. To show that the time for performance and election was enlarged and unexpired was upon the defendants. When the plaintiff rested his case was made out and the burden was then upon the defendants to overthrow it, by proof of the facts pleaded on their part, in avoidance of the breach alleged, and therefore we are of opinion the objection made as the second ground for a nonsuit, to the effect that there was at that stage of the case no proof of a breach of the contract, was not well founded.

III. The third ground on which the Court was asked to nonsuit the plaintiff we do not consider tenable. The bringing of the action was all the demand that the plaintiff was bound to make for the sum of money which the defendants agreed to pay him.

### *Extension of time to perform contract.*

IV. After the motion for a nonsuit was denied, the parties produced evidence. Several letters which passed between the defendants and plaintiff were introduced, in reference to an extension of time to the defendants upon the contract which they had executed to the plaintiff. Early in December, 1863, Gifford wrote to the plaintiff, in which he spoke of his ill luck

in opening the mine, stating at the same time in substance
that he wanted an extension of time on the agreement which
the defendants had executed to the plaintiff, and that unless he
could obtain it he would have " to throw the contract up."
The plaintiff replied to this letter agreeing to the extension
requested. On the trial the plaintiff admitted that the letters
named constituted a " valid extension of the time mentioned
in the contract." No particular term of extension was speci-
fied. Where, in such cases, the contract is silent as to the
duration of the extension, it must be presumed the parties
intended a reasonable time, and this the law will imply. In
argument the plaintiff's counsel maintains that the agreement
enlarging the time mentioned in the contract did not amount
to an enlargement of the time within which the defendants
might elect to abandon the purchase and reconvey the prop-
erty, but only an extension of the time for the performance of
the contract to open the mine, which they had assumed.

*The Court must determine the meaning of a contract.*

What the agreement meant was for the Court to decide, and
we are of opinion the extension of time for which the parties
stipulated applied to the entire contract—that the defendants
were entitled not only to a further reasonable time in which
to perform the work they had engaged to do in opening the
mine, but were in the meantime entitled to abandon their pur-
chase and reconvey the property to the plaintiff, as stipulated
in the contract, provided that when so electing they had to
that time proceeded with due diligence in the performance of
the plaintiff's contract with Cusenberry and others, as they
had contracted to do. The defendants' counsel at the trial
seemed to entertain this view of the agreement which had
been entered into extending the time mentioned in the con-
tract between the parties, and accordingly requested the Court
to instruct the jury :

"First—That the letters from Gifford to Luckhart, and
from Luckhart to Gifford and Ogden contain a valid contract
between the parties to extend or prolong the original contract.

"Second—The effect of the contract was to continue all the rights of the parties just as they were at the moment of the new contract for a reasonable time thereafter to perform the work contemplated."

The Court refused to give these instructions; but submitted it as a question of fact to the jury to find whether there was an extension of time after the contract between the plaintiff and defendants was made, and if so, what was that extension of time? Was it an extension of time for the development of the mine, or was it for the purposes embraced within the contract? Matters of fact dependent upon the finding as to the above questions in the affirmative were also submitted for the determination of the jury. Whether the jury under the general charge above noticed found the matters submitted in the affirmative or negative we have no means of ascertaining. If they determined these questions in the negative, then it became wholly unimportant to consider the dependent matters submitted. It was the duty of the Court as already indicated to determine the effect of the agreement in relation to enlarging the time mentioned in the contract, and for this error the judgment must be reversed and a new trial granted.

*Is the Court or jury to determine the issue of what is reasonable time to perform a contract?*

V. The agreement evidenced by the letters being an enlargement for a reasonable period of the term for the complete performance of the contract on the part of the defendants, or to make effectual their abandonment of the purchase, it becomes necessary, as the case must be remanded for a new trial to pass upon the question, whether it was for the Court or jury to determine the issue involved in this point. The Court, in submitting it to the jury, left to them to decide the question of what constituted a reasonable time in which the defendants might perform their contract or elect to abandon their purchase and reconvey the property to the plaintiff, under the agreement extending the time for that purpose. In several cases cited by the defendants' counsel, it is laid down

as the rule of law that what is a reasonable time within which a contract must be performed when it is silent on the subject, is a question of law. (*Atwood* v. *Clarke*, 2 Maine, 229; *Kingsley* v. *Wallis*, 14 Maine, 57; *Howe* v. *Huntington*, 15 Maine, 350; *Hill* v. *Hobart*, 16 Maine, 168.) In the case last cited the Court say: " Where the facts are clearly established or are undisputed, or admitted, reasonable time is a question of law. But where what is reasonable time depends upon certain other controverted points; or where the motives of the party enter into the question, the whole is necessarily to be submitted to the jury before any judgment can be found, whether the time was or was not reasonable." Ordinarily it is a matter of no difficulty to ascertain whether a particular question be one of law or of fact. But in the class of cases involving questions of reasonable time, reasonable care, due diligence and the like, it often happens that some general conclusion is to be drawn from a variety of facts and circumstances appertaining to the particular case. Upon this subject Starkie says:

" The law cannot prescribe in general what shall be reasonable time by any defined combination of facts, so much does the question depend upon the situation of the parties and the minute and peculiar circumstances incident to each case. If a man has a right by contract or otherwise to cut and take crops from the lands of another, the law, it is obvious, can lay down no rule as to the precise time, when they shall be cut and removed; all that can be done is to direct or to imply that this shall be done in a reasonable and convenient time; and this must obviously depend on the state of the weather and other circumstances, which cannot from their nature form the basis of any legal rule or definition." (Starkie on Evidence, 769.)

The term reasonable time is a technical and legal expression, which in the abstract involves matter of law as well as matter of fact. Whenever any rule or principle of law applies to the special facts proved in evidence and determines their legal quality, its application is matter of law. But whenever

the special facts and circumstances are such that the Court cannot by the aid of any legal rule or principle decide upon the legal quality of the facts, it is necessary that the jury should draw the inference in fact, with reference to the ordinary course and practice of dealing, and the general principles of morality and utility. Where the law itself prescribes what shall be considered to be reasonable time in respect to a given subject, the question is one of law, and the duty of the jury is confined to finding the simple facts. Where, on the other hand, the law " does not, by the operation of any principle or established rule, decide upon the legal quality of the simple facts, or *res gestæ*, it is for the jury to draw the general inference of reasonable or unreasonable in point of fact. In such cases the legal conclusion follows the inference of facts; in other words, the question as to reasonable time, etc., is one of fact, and the time is reasonable or unreasonable, in point of law, according to the finding of the jury in point of fact." (Starkie on Ev. 774.)

In *Cocker* v. *The Franklin Hemp and Flax Manufacturing Company*, 3 Sumner, 532, the question of reasonable time for the performance of a contract which was silent on the subject, was considered by Mr. Justice Story, in submitting the case to the jury, and he left it to them, after laying down the rules by which they should be governed, to determine from the evidence the reasonableness of the time allowed to be necessary for the performance of the contract undertaken. In his summing up to the jury the learned Justice referred with approbation to the case of *Ellis* v. *Thompson*, 3 Mes. & Wels. 445, in which Baron Alderson, in speaking of a contract for the delivery of goods, which contained no specification as to the time when the delivery should be made, said for that reason the law would imply that the delivery should be made within a reasonable time, and that what was a reasonable time was a question for the jury at the trial. (See also *Fry* v. *Hill*, 7 Taunt. 397; *Doe* v. *Sandham*, 1 T. R. 705; *Hacey* v. *Hurdom*, 3 B. & C. 213; *Pitt* v. *Shew*, 4 B. & Ald. 208.)

In the case under consideration the question of what time

was necessary and reasonable to be allowed the defendants to open the mine, or to elect to abandon the purchase after having faithfully and diligently prosecuted the work for that purpose, depended upon a variety of circumstances, and could only be determined by the jury under the instructions of the Court as to the principles of law which must be observed by them in coming to a verdict.

The judgment is reversed and a new trial ordered.