[Civ. No. 12051.    First Dist., Div. One.    Aug. 18, 1942.]

R. E. CLARK, Respondent, v. DULIEN STEEL PROD-
UCTS, INC. (a Corporation) et al., Appellants.

John T. McCarthy, J. Bruce Fratis and Cooley, Crowley & Supple for Appellants.

G. C. Ringole and Milton D. Sapiro for Respondent.

WARD, J.—This is an appeal by defendants from a judgment against them for broker's commissions arising from negotiations resulting in a contract for the purchase and sale of scrap iron.

In the fall of 1939 plaintiff's assignor, Joseph Rosenberg, interested Louis Dulien, the president of the Dulien Steel

Products, Inc., in the purchase of scrap iron located at Guaymas, Mexico. Mr. Dulien was advised by Rosenberg that approximately 5,000 tons of the scrap, owned by Banco Commercial del Pacifico, for whom Thomas de Reuda acted as agent, was available. Following meetings between Rosenberg and the above representatives of the prospective buyer and seller, a contract was entered into whereby the Banco Commercial del Pacifico, S. A. agreed ''to sell and the buyer [Dulien Steel Products, Inc.] hereby agrees to buy the following quantity of scrap iron, namely, from four thousand five hundred (4,500) to five thousand (5,000) kilos tons located at Guaymas, Mexico, and consisting of ship scrap and/or railroad scrap. . . .'' It was agreed that shipment should be made within ninety days of the date of the contract, October 20, 1939, the buyer undertaking to supply a vessel at Guaymas within such period. The contract further provided that the buyer was to establish a letter of credit for the sum of eighty-five thousand dollars in favor of the seller; and that the seller establish a $20,000 guarantee with a San Francisco bank to secure performance on its part.

Several days after the signing of the contract, Rosenberg, who was acting for the buyer, presented to Dulien for signature a contract for broker's commissions, which set forth that whereas Rosenberg ''has rendered services, as a broker, in the consummation of the sale of approximately 5,000 tons of iron ship scrap located at the City of Guaymas, . . . Mexico, . . . second party [Dulien Steel Products, Inc.] . . . agrees to pay to first party [Rosenberg] the sum of $1.50 per each gross ton of such scrap purchased by second party, as aforesaid, immediately upon payment of the purchase price of such scrap. . . .'' Dulien objected to the latter part of the above quoted portion of the contract and inserted in his handwriting words [which we have italicized] making the commission payable ''immediately upon *delivery and complete shipment and* payment of the purchase price of such scrap. . . .'' The change was initialed by both Rosenberg and Dulien.

About a week later, defendant Hyman-Michaels Company signed a contract with the Dulien Steel Products, Inc. for a one-half interest in the Banco-Dulien contract of October 20, 1939, to which reference was made, with a right to one-half of any profit, and an obligation for one-half of any loss, arising therefrom.

The contract for the purchase of the scrap was never per-

formed. There is evidence that the buyers were unable to get a vessel to Guaymas within the period provided; there is also some evidence that the sellers were unable to secure permits for the export of the scrap from Mexico. The contract was mutually cancelled, without, however, any participation or knowledge on the part of Rosenberg.

In the meantime, an action had been brought by plaintiff, assignee of Rosenberg, against defendants, for the commission claimed to be due as brokerage. The court made findings in his favor and awarded judgment against defendants and each of them in the sum of $6,700, based upon a purchase of 4,500 tons of scrap iron.

The appellants admit the execution of the contract with Rosenberg, but claim it was conditional; that commissions, in accordance with their contract, were to be paid only if the sale in connection with which it was to be earned was consummated; that the contract was void as the result of a mutual and material mistake of fact, in this, that only 1,875 tons of scrap were on hand for shipment from Guaymas; that there had been a complete misunderstanding among all the parties as to the amount there available. In this regard, appellants claim that in any event if Rosenberg was entitled to any commission, which they strenuously deny, he was entitled to a commission of $2,812.50 only, based upon the 1,875 tons procurable.

Respondent claims to be entitled to the full commissions; that the shipment of the scrap material was prevented solely by the default of the purchaser in not furnishing a vessel for its shipment.

Appellants base their appeal upon alleged errors of law and contend that the findings are not supported by the evidence and that the measure of damages applied is incorrect.

The trial court found that the contract was never executed, not by reason of any fault on the part of the seller, but solely due to the failure of the purchasers [appellants herein] within ninety days to provide a vessel for shipment of the scrap, of which it also found that it was not proven there were only 1,875 tons available at Guaymas. It further found that it was not true that the seller failed to perform by reason of its inability to deliver in excess of that amount or for any other reason, and that it was not true that the contracts were executed under a material mistake of fact, i.e., as to the existence of the amount of scrap sold.

█ Objection is made that there is no legal justification for the court's finding in favor of respondent on his cause of action on the common counts while at the same time finding for him on the express contract; in other words, that "the action upon the written contract precludes an action on *quantum meruit.*" The doctrine in *Gabrielson* v. *Hague Box & Lumber Co.,* 55 Wash. 342 [104 Pac. 635, 133 Am. St. Rep. 1032], cited in support of this contention, was repudiated in *Staples* v. *Esary,* 130 Wash. 521 [228 Pac. 514, 515], where the court said: "Text-books and decisions might be cited to the point of exhaustion, confirming the rule that a plaintiff may, where he is seeking but one recovery, plead in the alternative either upon an express contract or in *quantum meruit.*" The rule in the Staples case is the law of California. (*Los Angeles* v. *Blondeau,* 127 Cal. App. 136 [15 P. (2d) 553]; *Goldwater* v. *Oltman,* 210 Cal. 408 [292 Pac. 624, 71 A. L. R. 871].) If, in the statement of facts, the causes of action be antagonistic, it is the duty of the court, upon the submission of the case, to determine which has been sustained. (*Beatty* v. *Pacific States S. & L. Co.,* 4 Cal. App. (2d) 692 [41 P. (2d) 378].) In the present case, it is claimed that there was no evidence as to reasonable value of the services performed. If so, the finding on such count in that respect is surplusage and does not injure appellants. There is no inconsistency in setting forth a cause of action in two counts, contract and *indebitatus assumpsit,* when each refers to the same subject matter, and all that is necessary to determine is the amount due.

As to appellants' contention that in any event respondent was not entitled to commissions based upon the sale of 4,500 tons of scrap since 1,875 tons only could have been delivered and that payment to him should be limited to an amount based upon such tonnage, the trial court found that there was no shortage in material, and that appellants could have had the amount contracted for had they supplied the vessel for its shipment. Because of the conclusion we have reached herein on other questions, it is not necessary further to consider appellants' claim that there could be no damages in excess of $2,812.50, based upon the reduced tonnage.

█ Unless a contract places additional burdens upon a broker the general rule is that when in good faith he has secured for his principal a buyer or seller, ready, willing and able to sell or purchase, as the case may be, on terms agreed upon, and within a time limit, he is entitled to his commission. If

the broker fulfills all of the conditions of his employment, the fact that his principal fails to carry out the contract does not affect the former's rights. (*Jauman* v. *McCusick*, 166 Cal. 517 [137 Pac. 254]; *S. H. West & Co.* v. *Wagner*, 117 Cal. App. 523 [4 P. (2d) 276].) It should be noted in this case that not only did appellants contract with the party procured by the agent, but they further secured a $20,000 guarantee to insure the performance of the contract entered into. While such contract was eventually cancelled, it was only after the sellers of the scrap had brought suit against appellants [the purchasers]. The terms of settlement between the principals, arrived at more than ninety days after the date of their contract, are not shown by the record, neither does it appear, as stated, that the broker took any part therein.

Unless the wording of the agreement with the broker made payment of his commission contingent upon the performance of the terms of the contract between the seller and the buyer or any of them, the voluntary abandonment of it by them could not affect the broker's rights. The readiness, willingness and ability of the seller was demonstrated by the buyer entering into a contract with it. (*Avis* v. *Rebhan*, 92 Cal. App. 178 [267 Pac. 898]; *Johnson* v. *Krier*, 59 Cal. App. 330 [210 Pac. 966]; *McNamara* v. *Steckman*, 202 Cal. 569 [262 Pac. 297]; *Grove* v. *Lewis*, 125 Cal. App. 357 [13 P. (2d) 847].)

On the strength of the wording of the broker's contract, which recited that he was to be paid $1.50 per ton of material purchased "upon delivery and complete shipment and payment of the purchase price," appellants contend that the broker's right to recover fell with the termination of the contract for the sale of the scrap iron. If, as the court found, the failure of "delivery and complete shipment" was due to the principals' fault, the broker's right should not be prejudiced. The words added by Mr. Dulien to the broker's contract merely provide a time for the payment of services already rendered, not a limitation of his right thereto. The question naturally arises as to whether there is evidence in the record indicating fault on the part of the principals. Assuming that the inserted words could be interpreted as constituting a condition precedent to the payment of the broker's commission, if the trial court made a correct finding of fault on the part of appellants, this phase of the case is at an end.

■ The record shows that appellants did not actually furnish a vessel for the shipment of the scrap, although they did endeavor to charter one. They attempt to establish that their failure to do so was immaterial since the amount of tonnage contracted for was not available at Guaymas. The burden of proving these claims was upon appellants. A dealer in scrap and metals engaged in business in Mexico City testified that he was familiar with the quantity of scrap at Guaymas; that there were only 1,875 tons. If it should be assumed that his testimony was correct, still it does not appear that such information was communicated to appellants until after the time fixed for the supplying of the vessel had expired. A reading of the testimony of this witness shows certain weaknesses and personal interest in the matter sufficient to justify the trier of the facts in discounting his testimony. The trial court was of the opinion that appellants had not satisfactorily borne their burden of sustaining the affirmative defense. The issue in this respect is not one requiring expert knowledge but is a question purely of fact, a matter in which a reviewing court may not interfere.

■ Appellants contend that the broker's contract was executed under a material mistake of fact as to the quantity of scrap iron available, which rendered it unenforceable. The court explicitly found that there was no "material or any mistake" as to the quantity of scrap. This finding is inseparable from the finding that a shortage in tonnage was not proven. Having determined the correctness of the latter finding, the claim as to mutual mistake is immaterial.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.