[Civ. No. 13826.   First Dist., Div. One.   Sept. 20, 1948]

HARRY J. LOVE, Appellant, v. E. GULYAS et al.,
Respondents.

Howard E. Gawthrop for Appellant.

Anthony S. Devoto for Respondents.

BRAY, J.—Plaintiff appeals from a judgment in favor of defendants in an action for a real estate broker's commission. Plaintiff also attempts to appeal from the order denying his motion for a new trial, but, as has been pointed out many times in the decisions, such an order is not appealable.[1]

There was a conflict in the testimony as to some of the facts in the case, particularly with reference to the conversations between plaintiff's agent, Rose, and Frank J. Needles, who represented the prospective buyer. Taking the undisputed facts and the disputed ones most favorable to the defendants, together with the reasonable inferences therefrom, as we are required to do, the facts are as follows: Plaintiff Harry Jay Love, doing business under the name of Love Realty Company, on October 28, 1946, obtained from defendants a written exclusive authorization, for the period of 60 days thereafter, to sell the fixtures, lease and business of the bowling alley owned by the defendants, for the sum of $27,500. Defendants agreed to pay plaintiff a commission of 10 per cent of the selling price. "If, within five (5) days after the termination of this listing said broker notifies me personally or by mail in writing, that, during its life, he negotiated with persons named by him and sale is made within ninety (90) days after termination of this contract to any

---

[1] See *Hughes* v. *De Mund,* 195 Cal. 242 [233 P. 94]; *Lee* v. *Dawson,* 44 Cal.App.2d 362 [112 P.2d 683].

person so named," defendants agreed to pay plaintiff the commission above mentioned.

On December 13, 1946, plaintiff received a letter from Needles, dated December 12, stating that pursuant to a conversation he previously had with Rose, an employee of plaintiff's, he was offering, on behalf of an undisclosed client, the sum of $20,000 for the bowling alley, and he enclosed a check in the sum of $750 as a deposit on the purchase price. Rose reported the offer to defendants, who refused to accept it, but stated that they would accept $22,500 instead of the $27,500 mentioned in the authorization to sell. Rose, in plaintiff's name, signed a deposit receipt, in the usual form, stating that plaintiff had received from Needles $750 as a deposit on account of the purchase of the bowling alley for the sum of $22,500. Following the portion signed by plaintiff appears the printed words, "I agree to purchase the above described property on the terms and conditions herein stated," and two blank lines, and the word "Purchaser." Neither Needles nor his principal ever signed this document. There then followed a paragraph which was signed by defendants, and in which they agreed to sell "the above described property on the terms and conditions herein stated, and agree to pay the above signed broker as commission ten per cent of above purchase price. . . ."

Rose phoned Needles and told him that the defendants would sell for $22,500. Needles then contacted his principal, and later phoned Rose, advising him that his client would accept the defendants' offer to sell at $22,500, provided the client could finance the transaction. At Rose's request, Needles agreed to confirm by telegram, saying, "but let's have it understood that these people have to finance this thing." Needles, on December 16, sent plaintiff a telegram reading: "Final offer *per conversation* $22500." (Emphasis added.) Needles' principal was one John C. Major. From December 16, 1946, until January 28, 1947, Major was endeavoring, principally from one Howell, to obtain a loan so that he could finance the purchase of the bowling alley. Both Rose and defendants were informed frequently by Needles of the progress of his principal's effort to finance the purchase of the alley. Defendants requested Rose to get the purchaser's signature on the deposit receipt which they had signed. On January 13, Rose wrote Needles enclosing the receipt and requesting that Needles have his client sign it. On January 25, Needles informed Rose that Major could not raise the money to buy the alley. Rose the

612

same day phoned the defendant Gulyas, telling him the deal was off, and giving the reason why. On January 28, Needles wrote plaintiff that the deal was off and asked for a return of the $750 deposit check. The same day, Rose called on defendants and asked for another exclusive authorization to sell, which defendants declined to give. On the same day defendants signed and Rose received a letter stating: "We wish to inform you, to terminate the deposit receipt and all other contracts involved with the sale of STEEL BOWL to party known as Frank R. Needles on deposit receipt, price that was quoted as twenty ~~thousand~~ two thousand five hundred dollars."

The bowling alley was sold on January 29, to Major through another agent, one Cameron, under the following circumstances: Defendant Gulyas, about August, 1946, saw Major at the bowling alley in the company of Cameron, who was a real estate broker. Cameron did not have an exclusive listing from defendants, but was trying to get a loan for Major so that he could buy. After about two months' unsuccessful effort to raise money for Major, Cameron did nothing further, and Major dropped out of sight. Defendants heard nothing of or from Major thereafter, and did not know until January 25, that Major was Needles' principal. On January 29, after Needles had terminated all negotiations with plaintiff, Major called Cameron, told him that the American Trust Company had turned down his application for a loan, and asked Cameron if he could negotiate one for him. Cameron thought he could, and Major agreed to be at his office at 2 o'clock that afternoon. Cameron communicated with his bank, offering to put up his commission as collateral, and the bank agreed to make the loan. Cameron then phoned defendants, asking if the alley had been sold, and told them he had a buyer for it. Defendants, Major and Cameron met at the latter's office that afternoon, and an agreement to sell to Major, and for him to buy, at $22,500, was executed by the parties. This sale was consummated, Cameron receiving a commission of $2,250.

Plaintiff contends that the complaint pleads facts forming the basis of relief upon two theories: (1) that he produced a buyer who entered into a written contract with defendants to buy the bowling alley, and (2) that within the time provided in the listing agreement he notified defendants that he had negotiated with Major, and that the defendants made sale of the alley to such person within the 90-day period, hence entitling plaintiff to the commission.

## Major Did Not Contract to Buy

The facts do not support plaintiff's contention on the first theory. At no time did Major actually agree unconditionally to buy the alley. The only acceptance obtained by plaintiff of the offer of defendants to sell, as set forth in the deposit receipt, was Needles' telegram, "Final offer *per conversation* $22500." (Emphasis added.) This was obviously a conditional acceptance, conditioned, as set forth in the conversation, upon Needles' principal being able to raise the necessary money to pay the purchase price. Thus, plaintiff did not produce a buyer, ready, able and willing to buy the alley. In the letter of December 12, offering $20,000 for the alley, and accompanied by the deposit check of $750, Needles had set forth the requirement that the lease to be transferred to the buyer should contain an option to renew for a five-year term at the expiration of the present term. This deposit was retained by Rose during the entire time of his negotiations with Needles, and is still retained by him. After sending the telegram, Needles agreed that the option requirement set forth in the letter would be waived. Neither the retention of the deposit nor the references to the conditions set forth in the letter, in any way change the fact that the purchaser's acceptance of the seller's offer was a qualified one. In fact, in agreeing to waive the option requirement, Needles again referred to the fact that everything was conditional upon his client's ability to finance, for he said, ". . . if I can raise the 22-5, we will take it under the present terms of the lease." That the acceptance of the seller's offer to sell must be unconditional to entitle the broker to a commission is well settled. (See *Edwards* v. *Billow,* 31 Cal.2d 350 [188 P.2d 748].)

Plaintiff's position is based upon his assumption that the three documents—(1) Needles' letter of December 12, offering to purchase for $20,000 upon certain conditions; (2) the deposit receipt signed by defendants; and (3) the telegram from Needles—constitute a binding agreement on the part of the defendants to sell and of Needles (for his principal) to buy; and hence, as said in *Clark* v. *Dulien Steel Products, Inc.,* 54 Cal.App.2d 92, 97 [128 P.2d 608] : "The readiness, willingness and ability of the seller was demonstrated by the buyer entering into a contract with it." But the facts show, as pointed out heretofore, that no such contract was entered into.

Plaintiff, relying among others upon the cases of *McNamara* v. *Steckman,* 202 Cal. 569 [262 P. 297], *Meyer* v. *Selg-*

*gio,* 80 Cal.App.2d 161 [181 P.2d 690], and *Deeble* v. *Stearns,* 82 Cal.App.2d 296 [186 P.2d 173], contends that the evidence showing that the buyer's acceptance was a qualified one, should not have been admitted, as it was varying by parol evidence the terms of the written agreement. These cases are distinguishable from the one at bar, in that in each of them the buyer entered into an unqualified agreement to buy, that is, the writing between the parties showed an unqualified, rather than, as here, a qualified agreement of the buyer, and hence there was nothing ambiguous in the writings requiring explanation. Here the only writing on the buyer's behalf shows an acceptance "per conversation," which necessarily required explanation by parol evidence. In the McNamara case, *supra,* the difference in the situation with that here is well expressed by this language of the court (p. 572) : "His unqualified acceptance thereof could have been expressed no more plainly than it was by his signature to that document. . . . 'It is a matter of no consequence that in the beginning somewhat different terms, were contemplated . . .' " In the Meyer case, *supra,* the seller and buyer entered into a valid written agreement of purchase and sale, under which the buyer failed to perform. That was not the situation here. Likewise in the Deeble case, a binding written contract between the seller and buyer was entered into, which was unambiguous, and to vary the terms of which the court properly refused to permit parol evidence. In our case, the evidence was necessary, not to vary the terms of the contract, but to explain the meaning of the words "per conversation," which obviously cannot be interpreted without explanation.

■ Plaintiff cites 10 California Jurisprudence, page 919, to the effect that it is a well-established rule that the parol evidence rule is a rule of substantive law and not dependent upon objections made at the trial, but ignores the statement on page 918, applicable here, that the rule "does not apply where the instrument does not purport to be a complete statement of the agreement of the parties . . ." ■ Where the terms are ambiguous or uncertain, the parol evidence rule does not apply; and as said in 10 California Jurisprudence, page 941, ". . . this is not allowing parol evidence for the purpose of varying or altering the instrument, or of putting a different construction upon its language from that which it would naturally bear, but for the purpose of showing the circumstances under which the language was used, and applying it according to the intention of the parties."

### Sale by the Owners

Plaintiff contends that under his complaint and the facts, he is entitled to recover because of the sale made by the owners to Major. An examination of his complaint, however, discloses that he has failed to plead this theory. His complaint alleges that through his efforts he brought defendants and Major, through his agent Needles, together, and that the said Major, through his agent Needles, "did in writing offer to buy said property for the said sum of . . . $22,500, and said defendants . . . agreed to sell said property to said John C. Major at said price. . . . That subsequently thereto and prior to the expiration of said agreement marked Exhibit 'A,' and incorporated herein [the listing agreement, a copy of which was attached to the complaint] defendants did sell said property to said John C. Major, for a price which plaintiff is informed and believes, and upon such information and belief, alleges to be . . . $22,500." The last paragraph of the complaint alleges the receipt by plaintiff of the $750 deposit, which plaintiff is holding for whomever may be entitled to it.

There is no allegation in the complaint to bring plaintiff within the terms of that portion of the listing agreement upon which he relies under his second theory. The agreement on its face shows that the listing expired on December 28. There is no allegation that within five days of the termination of the listing plaintiff notified defendants that he had negotiated with Major. Plaintiff now contends that the parties by their acts extended the agreement until January 28, and that on January 25, he gave defendants the name of Major as the party with whom he had been negotiating. But there is no allegation in the complaint that the listing was extended, or that he notified defendants of Major's name. It is apparent that the entire complaint is framed upon the theory that plaintiff brought Major, through Needles, and defendants together; that Major in writing offered to buy and defendants in writing agreed to sell to Major, and "That subsequently thereto and prior to the expiration of said agreement" defendants did sell to Major. While courts should not be technical in the matter of pleading, a plaintiff should not be permitted to base his entire complaint on one theory, and then later adopt another theory which is not even hinted at in the pleading. The rule of extension of a broker's contract is dependent upon a waiver. Moreover, the five-day provision does not apply if the broker has otherwise performed the contract. The com-

plaint alleges full performance of the contract, and in no way alleges nonperformance and extension of it. In *Baird* v. *Madsen*, 57 Cal.App.2d 465 [134 P.2d 885], there was a situation similar to the case at bar. The broker's contract provided that if the property was sold or exchanged, within three months after its expiration, to any person to whom the broker had previously offered it, the seller would pay the commission. There the broker contended that the contract was extended by negotiations between the seller and a prospective purchaser produced by the broker after the contract had expired. After negotiations by the broker with this purchaser had terminated, and more than three months had elapsed after the contract on its face had expired, the seller sold the property to the person originally produced by the broker. As here, the broker sued for his commission upon the theory that a sale had been consummated by him, and then attempted to recover on the theory that while he had not effected a sale, the owner, within three months of the termination of the contract, *as extended,* had sold to the person produced by him. In holding that this theory could not be sustained, the court said (p. 473): ". . . in order to invoke the doctrines of extension or modification of contracts, the essential facts relied upon to bring the situation within the operation of those doctrines must be pleaded; and here no such facts were pleaded. The theories of extension or modification are not even suggested. On the contrary, the cause of action sued upon is based entirely upon the June 20, 1939, sales agency contract as executed. The rule in this regard is that a plaintiff must plead the particular contract which he claims he has performed; he cannot recover on proof of another contract, or of a contract substituted for, or constituting a modification of the contract declared on. [Citing cases.] . . . if plaintiff sought recovery under the contract of July 26, 1939, as an extension of the June 20, 1939, contract, he should have based his complaint on that contract or pleaded it as an extension of the June contract, instead of pleading full performance of the June contract."

It is contended that although this theory was not pleaded, evidence was admitted on the issue, and hence the case is brought within the rule that where a case is tried, without objection, upon a theory different than that alleged in the pleadings, the parties cannot complain of the failure to allege facts to support that theory.[1] However, here the evidence

---

[1] See *Swanson* v. *Hempstead,* 64 Cal.App.2d 681 [149 P.2d 404].

showing the sale by defendants to Major was admitted over defendants' objection. When the plaintiff called defendant Balogh, and proceeded to prove the sale by defendants to Major, defendants objected, and then requested that the record show that "this examination, relative to this subsequent sale, is all subject to our objection." The court so ruled. Thereafter defendants called Cameron as a witness, to show that Major went to him asking him to help him finance the purchase of the alley, and that Cameron was the one who succeeded in arranging the financing for Major. Plaintiff then objected. Defendants contended that as plaintiff had gone into the subsequent sale, they should be permitted to do so. The court sustained the objection. While the court did permit some evidence to be admitted by Cameron concerning this subsequent sale, it is apparent from the transcript that defendants' purpose in offering this evidence was to answer the testimony which the court had admitted over their objection, and also to show that there were no negotiations between defendants and Major or Cameron, except those by plaintiff, during the period of the listing agreement and its claimed extension. Moreover, plaintiff's examination of his own witness, Rose (the one who handled the entire transaction for plaintiff), shows that plaintiff, in the lower court, was not proceeding on the theory he is now advancing. Rose testified that Needles wanted the name of the buyer kept unknown, and that it was the defendant Gulyas who told him, Rose, the name of Needles' principal; that "he had found out someway, I don't know how."

Thus, the record shows that the issue concerning the claimed second theory was not before the court without objection, and was not advanced there by plaintiff. A reading of the transcript definitely shows that plaintiff's presentation of the testimony of the defendant Balogh was to prove his allegation that he had fully performed his agreement in getting buyer and seller into a written contract of purchase and sale, which actually resulted in a completed sale.

Plaintiff complains that the court did not make a finding as to whether plaintiff gave defendants proper notice of the name of the prospective buyer, and as to whether or when the later sale to Major took place. The court did find on all matters set forth in the complaint, with the exception of the allegation that defendants, prior to the expiration of the listing agreement, sold to Major. It did find that Major's offer to purchase was conditioned upon his ability to finance the purchase,

and that Major was unable to finance within the limitation of time set forth in plaintiff's authorization to sell. Such finding necessarily negatived plaintiff's allegation that prior to the expiration of the listing agreement defendants sold the property to Major. ■ Moreover, if findings were made on this question, they would be adverse to plaintiff. ". . . where from the facts found and the judgment ordered it is evident in the light of the entire record that if more complete findings had been made they would have been adverse to the contention of the appellant, it will be deemed that such inferences were drawn by the trial court, and in those circumstances the failure so to find is not a ground for the reversal of the judgment." (*Boas* v. *Bank of America*, 51 Cal.App.2d 592, 598 [125 P.2d 620].) There is nothing in the record to show that the court was ever requested to find as to the giving of notice of the name of the prospective buyer, about which there was no allegation in the complaint.

■ The facts, too, are against the plaintiff on this issue. The listing agreement, by its very terms, definitely terminated on December 28. Plaintiff did not notify defendants of Major's name within five days of that date. He claims that because the defendants permitted him to continue negotiations with Needles after that date, the listing was extended until January 28, when defendants in writing terminated the deposit receipt "and all other contracts." However, the acts of the parties did not constitute a continuance of the listing agreement. They merely constituted what would have been an extension of time by defendants, had the sale with Needles been consummated. At most their effect was that, if plaintiff had succeeded in consummating the sale with Needles, there would have been a performance by him of his part of the contract, although late, which would have taken it out of the statute of frauds. The listing agreement itself was not extended. Had plaintiff, after December 28, and before January 28, produced an entirely new purchaser, defendants would have been under no obligation to sell to such person. They were waiving the time element only as to Needles' principal. Their actions did not constitute an extension of any other part of the listing agreement, which terminated and ended in 60 days. Therefore, the plaintiff failed to comply with the contract in not notifying defendants of the name of the prospective purchaser within five days of December 28.

■ It has been held that the time set forth in a real estate broker's contract to sell real property cannot be extended by

oral agreement. (*Hicks* v. *Post,* 154 Cal. 22 [96 P. 878] ; *Rice Lands etc. Co.* v. *Blevins,* 61 Cal.App. 536 [215 P. 402].) However, there is an exception to that rule where there has been a full performance by the broker. In such case, it is held that the limitation of time mentioned in the writing is waived by the seller continuing with the deal, through the same broker, after the expiration of the time expressed in the writing. (See *Moore* v. *Borgfeldt,* 96 Cal.App. 306 [273 P. 1114] ; *Umphray* v. *Hufschmidt,* 73 Cal.App. 140 [238 P. 749] ; *Estes* v. *Hotchkiss,* 63 Cal.App. 284 [218 P. 605].) The effect of such cases is that where the broker has completed his part of the contract with the consent of the seller, after the time limit has expired, his performance of the contract takes it out of the statute of frauds, and also estops the seller from relying on that statute. Here, there was no performance by the broker even after the time limit had expired, and hence there was no performance to extend the contract beyond the original time limit. The case of *Luckhart* v. *Ogden,* 30 Cal. 547, cited by plaintiff, is not in point, as there the extension of the contract was in writing.

This is not a case in which a broker brings a buyer and seller together, and in order to prevent the broker from getting his commission, the seller holds off selling until the broker's agreement has expired, and then sells to the person so produced. Here, prior to plaintiff's entry into the field, there had been some negotiations between Major, the agent Cameron, and defendants. These, however, were completely broken off. After Needles had been unable to arrange financing for Major, and after Rose had notified defendants that the deal was completely off for failure of Major to raise the necessary money, Major went back to Cameron, who then was able to arrange the financing through his own credit, and then notified defendants. The actual sale was not made through any effort of plaintiff, but entirely through the efforts of Cameron, who earned and received the commission. To require the defendants to pay plaintiff an additional commission, on the claim that because defendants were willing to, and did, extend plaintiff's time to make a sale to Major until plaintiff himself stated the sale was off, defendants thereby extended all of the terms of the listing agreement, would be unjust, and contrary to law.

The judgment appealed from is affirmed.

Peters, P. J., and Ward, J., concurred.