[Civ. No. 21738.   Second Dist., Div. One.   Jan. 16, 1957.]

SYDNEY M. WILLIAMS, Respondent, v. CLAUDE S. SPENCE, Appellant.

Robert C. McMahon and James A. Broderick, Jr., for Appellant.

Morton R. Goodman for Respondent.

WHITE, P. J.—Defendant Claude Spence appeals from a judgment declaring the rights of the parties in certain funds then held and later to be collected by cross-defendant Quality Films, Inc., under a contract for the distribution of a certain motion picture.

By appellant's cross-complaint he alleges a controversy existing between respondent and appellant as to the ownership of the picture and of the distribution contract and seeks a declaration of such rights, and particularly a declaration that appellant is the owner of the film and rights to the proceeds of the distribution contract by virtue of an assignment executed by respondent.

It is conceded by all parties that Quality Films, Inc., is a mere stakeholder awaiting adjudication of the rights of appellant and respondent. The distribution contract is a mimeographed form letter addressed to Quality Films, Inc., dated December 12, 1951, signed by Claude S. Spence and Sydney M. Williams and accepted and approved for Quality Films, Inc., by Charles Weintraub, its president. By the terms of that letter agreement, there appears no difference between appellant and respondent. Each agrees that Quality Films is to distribute the picture, collect the revenue, retain 20 per cent of the gross proceeds, and ''remit to the undersigned the total proceeds'' less 20 per cent. Each agrees to supply prints, reels and shipping cases. Each ''warrants and represents'' that he ''has the right to enter into this agreement . . . and that such telecasting will not violate the rights of others. . . .''

Appellant contends that respondent "was present at the negotiation conferences with Quality Films as his attorney; was acting in that capacity at the time he signed said contract, and failed to inform defendant (appellant) of any claim to the motion picture or proceeds of distribution." The court found upon substantial evidence that "It is true that plaintiff Sydney M. Williams is, and for some years has been, an attorney licensed to practice in the State of California, and pursuant to said license has so practiced. It is not true that plaintiff Sydney M. Williams acted as an attorney for the defendant Claude S. Spence in relation to any matters which are the subject of this litigation."

Respondent was the producer and first owner of the picture. By the terms of a letter agreement between appellant and respondent dated July 12, 1944, and signed by both, appellant loaned $25,000 to respondent to be repaid "solely from the so-called producers' share of the gross receipts of the picture . . . prior to the repayment to myself (respondent) from the receipts of said picture of all sums which I may have invested or advanced . . . You (appellant) acknowledge that I may repay from the receipts of the picture other production loans prior to the repayment of your loan . . . As compensation to you for the making of said loan, I agree that you shall be paid the following: (a) . . . the sum of $28,750.00 instead of the sum of $25,000.00; (b) a sum equal to 15% of the profits to be received by me from the distribution of the picture. The term 'profits' as used herein shall mean the amount by which the moneys paid by Republic Pictures Corporation . . . exceeds the total cost of production of the picture . . ." A check from respondent to appellant, dated March 15, 1946, for $4,450 bears the following endorsement signed by appellant: "Payment en re: The Big Show Off including $3,750.00 interest as per agreement, balance due $22,600.00 to be paid as per agreement only as follows: 50% of proceeds of producers' share until such sum of $22,600 is paid in full. Thereafter, when, as, and if, the said producers' share shall have reached the sum of $150,000 said Claude S. Spence is entitled to receive 15% of any and all further receipts of said producer's share of the Big Show Off."

The facts next summarized were found by the trial court to be true. Payments were made under the terms appearing on the back of said check from March 15, 1946, until August 5, 1949, when respondent executed and delivered to appel-

lant "a full and complete assignment of all of plaintiff's (respondent's) right, title and interest in and to said motion picture and the proceeds from its distribution." At that time, August 5, 1949, there was still owing to appellant from the proceeds of said picture the sum of $6,000 (not yet collected from said picture by Republic, the then distributor); and respondent then owed appellant an additional $4,000 advanced to him in merchandise for his business in Chili, etc. "Said assignment, although absolute on its face, was given by plaintiff (respondent) to secure to defendant (appellant) payment of $10,000.00 . . ." After said assignment appellant received $10,573.95 and respondent received nothing from the proceeds of said picture. As of January 15, 1956, Quality Films had on hand available for distribution to plaintiff and defendant $3,849.98, and the producer's share referred to in the agreement endorsed upon the check of March 15, 1946, has reached $150,000.

Appellant urges three grounds for reversal: (1) prejudicial "error in admission of extrinsic evidence contradicting the terms of the compromise set forth in 'assignment and release' dated August 5, 1949"; (2) lack of substantial evidence to support the finding that "said assignment, although absolute on its face, was given by plaintiff (respondent) to secure to defendant (appellant) payment of $10,000.00 . . ."; and (3) absence of a finding that "plaintiff and defendant did or did not enter into and execute oral agreement modifying the assignment and release."

Appellant, in his brief, discusses at length the rule excluding extrinsic evidence (18 Cal.Jur.2d 737 et seq.), admits there are some miscellaneous exceptions, and then states that in the instant action there were no facts warranting the admission of parol evidence.

The rule excluding extrinsic or parol evidence is not a rule of evidence, but is a part of the substantive law. (*Hale* v. *Bohannon*, 38 Cal.2d 458, 465 [241 P.2d 4].) Therefore, it is unnecessary to consider what objections, if any, were made by appellant in his effort to exclude such evidence in the instant action. The rule, however, is not applicable where the written instrument does not purport to be a complete statement of the entire agreement of the parties. In such cases, extrinsic evidence should be admitted for the purpose of showing the circumstances under which the writing was signed and delivered and the intention of the parties at

that time. (*Love* v. *Gulyas,* 87 Cal.App.2d 608, 614 [197 P.2d 405].)

In the instant action, the written ''Release and Assignment'' does not purport to be a compromise or accord and satisfaction. It is an assignment signed only by respondent. The testimony of both appellant and respondent was that said assignment was executed by respondent when he was in Chili in order that appellant might present it to Republic, the then distributor of the picture, and procure from Republic a cancellation of its contract with respondent. Appellant, in his briefs, assumes that the term ''Release'' is conclusive evidence that, in consideration of an absolute assignment to him, he released respondent from all liability for the $4,000 debt due him as well as the $6,000 which he still had coming to him from the picture. Appellant did not sign the instrument, and it contains no compromise of his claims against respondent. According to the testimony, the appellant and respondent had for many years been very close and trusting friends. The assignment was presented by appellant to Republic, whose contract was then cancelled. Later an agreement with Quality Films was made for TV releases.

Appellant has cited many decisions involving controversies growing out of integrated mutual agreements in writing or assignments or conveyances delivered without accompanying act, circumstance, or word to indicate that the purpose of the transfer was to secure payment of a debt. None of the cited decisions considers facts analogous to those of the instant action. It would serve no useful purpose to discuss them here.

When, as in the instant action, it is claimed that an assignment was given as security for a debt and was not intended as an outright transfer of property, extrinsic evidence may be admitted to show its true purpose and object, the relative rights of the parties and the real ownership of the property. (*Renton, Holmes & Co.* v. *Monnier,* 77 Cal. 449 457 [19 P. 820] ; *Sherman* v. *Panno,* 129 Cal.App.2d 375, 388 [277 P.2d 80].) Such evidence may consist of acts, conduct and circumstances, and the question whether the showing is clear and convincing is primarily one for the arbiter of the facts. (*Hansen* v. *Bear Film Co., Inc.,* 28 Cal.2d 154, 173-175 [168 P.2d 946].)

In our opinion, the admission of parol and other evidence of the intent and purpose for which the assignment was executed was not error in the instant action.

■ There is in the record evidence sufficient to support the finding that said assignment was given as security. The testimony of respondent, if believed by the court, is sufficient. The testimony of appellant to the contrary, even ignoring the many inconsistencies therein, did not take from the trial judge the duty to find true the testimony believed by him.

In the instant action, however, the trial judge was not required to rely upon the testimony of respondent alone. Charles Weintraub, president of Quality Films, Inc., testified that it was respondent who contacted him in regard to the distribution of the picture; that all parties signed the contract in the presence of each other; that appellant and respondent each referred to the picture as "our picture"; that respondent, in appellant's presence, told him that appellant "had money coming from the picture and to make all payments to appellant until further notice"; that respondent instructed him, in the presence of appellant, to change the production credit on the picture to "Williams-Spence" or "Spence-Williams"; and that the first check was sent to respondent and no complaint was made to him or his employees by appellant. There is also evidence of similar conduct of the parties in negotiations with other distributors before the agreement with Quality was made.

■ In the instant action, the court having found and concluded that the assignment was intended as security for payment to appellant of his debt only, no finding that "plaintiff and defendant did or did not enter into an executed oral agreement modifying the assignment and release" was required.

The judgment is affirmed.

Doran, J., and Fourt, J., concurred.

A petition for a rehearing was denied February 14, 1957.